SHELDON et al., Appellees,

v.

FLINN et al., Appellants.

[Cite as *Sheldon v. Flinn* (1993), 89 Ohio App.3d 490.]

Court of Appeals of Ohio,
Wayne County.

No. 2778.

Decided Sept. 15, 1993.

*Peggy Schmitz,* for appellees.

*James M. Richards,* for appellants.

REECE, Judge.

Defendants-appellants, Elwyn A. and Myrtis Flinn (the "Flinns"), appeal the trial court's order which transferred a portion of their property to the plaintiffs-appellees, Edward M. and Virginia Sheldon (the "Sheldons"). We affirm.

On August 24, 1983, the Flinns entered into a memorandum of agreement to give Tom and Anne Haley an option to purchase 8.5 acres of their land. The Haleys did not exercise this option but rather assigned it to the Sheldons. The Flinns refused to sell the property to the Sheldons, insisting that the option was personal to the Haleys. The Sheldons initiated an action for specific performance and the trial court found the option was assignable. Accordingly, on June 14, 1991, the trial court ordered the Flinns to convey the property to the Sheldons following a survey and the performance by the Flinns of "all other obligations pursuant to the memorandum of agreement."

The Sheldons then caused the property to be surveyed and had a deed prepared. The Flinns refused to sign this deed and two other deeds that the Sheldons offered. According to Elwyn Flinn, this was because the deeds submitted by the Sheldons did not reflect the language of the option agreement. Among other complaints, Elwyn Flinn claimed the option agreement did not give the grantee of the subject property an easement to water from the Flinns' spring if a suitable well could not be established on the Sheldons' property. Each deed submitted by the Sheldons gave them an easement to receive water.

On April 23, 1992, the Sheldons moved that the Flinns show cause why they should not be held in contempt of court for their failure to transfer the property pursuant to the court order or, alternatively, requested the court to order a deed

of conveyance pursuant to Civ.R. 70. The Flinns filed their own motion to show cause requesting the Sheldons be held in contempt for failing to produce an adequate deed.

On May 29, 1992 and June 3, 1992, the court heard evidence on these motions for contempt. During his opening statement, the Flinns' attorney objected to the court admitting evidence for an interpretation of the option agreement as such was not proper on a contempt motion pursuant to Civ.R. 70. However, both sides presented evidence on the deeds' interpretations. After the hearing, the court addressed a letter to the Sheldons, stating:

"The Court does not believe [the] Flinns are in contempt of Court. However, the plaintiffs are entitled to have a deed from them. I will sign an order directing the Flinns to sign a deed to the property. The order should further provide that if they fail to sign the deed, the transfer will take place by Court order. Please prepare an order and submit it for my signature."

The parties were still not able to agree on the form of the deed so each party submitted a deed to the court that they felt accurately reflected the option agreement. The deed submitted by the Flinns is the same as the deed adopted by the court except in three respects: (1) Mr. Sheldon's first name is incorrect on the Flinns' deed; (2) each deed acknowledges the driveway easement, however, the court's order merely refers to the journal entry in which the easement was created to give its description; and (3) the court order recognizes in explicit terms an easement to the water and allows the Sheldons to tap into an existing water line that runs through their property or run their own line to the spring. On December 9, 1992, the court entered judgment and adopted the deed submitted by the Sheldons. The Flinns appeal, raising three assignments of error.

## Assignment of Error No. I

"The trial court committed error prejudicial to Flinn by approving and journalizing the order and proposed deed submitted by Sheldon after the Flinn deed was executed and delivered to Sheldon by Flinn."

This matter was before the trial court on a motion to show cause why the Flinns were not in contempt of court for failing to execute a deed to the subject property. In that motion, the Sheldons also invoked Civ.R. 70, which grants a court authority to issue an order transferring property if a party will not execute a deed as provided by a court order.

The Flinns posit that neither of these actions, a motion for contempt or a motion for a transfer pursuant to Civ.R. 70, allows the court to interpret the option agreement. The Sheldons maintain that the court had the authority to

interpret the deed and even if it did not, the Flinns submitted to the court's authority by participating in the process. We agree with the Flinns that the court did not have authority by virtue of a motion for contempt or a motion for an order pursuant to Civ.R. 70 to interpret a deed. However, that flaw was not fatal in this case because the Flinns submitted to the court's proceedings.

Generally, we are reluctant to find a party submitted to a procedure when an objection to that procedure is on the record even if that party then appears in the challenged procedure. Otherwise, a party is left with a Hobson's choice: participate and lose an objection to the procedure or refuse to participate and risk an adverse judgment on the merits. However, the Flinns did more than merely participate. In this case, the Flinns filed a show cause motion claiming the Sheldons were in contempt for failing to prepare a deed that accurately reflected the option agreement. They presented three witnesses at the show cause hearing, at least two of whom testified regarding the proper interpretation of the deed.[1] During his testimony, Elwyn Flinn stated that he would be willing to sign a deed that resolved all the issues of the deed's ambiguity. After the Sheldons submitted a deed and moved the court to order the Flinns to execute it, the Flinns moved the court to accept a deed they had prepared because it was the correct reflection of the parties' intent. In the deeds they submitted, each party attempted to interpret the option's language that controlled water rights. The Sheldons attempted to change the language by explicitly providing for an easement; the Flinns attempted to change the language by adding that the grantee may use water on the property, thus attempting to limit the duration of the right to use water. Accordingly, we find that by presenting evidence on the issue of intent, submitting a deed that interpreted the option agreement and attempting to invoke the court's jurisdiction to enforce that deed as an order, the Flinns submitted to the court's authority to interpret the deed.

Assuming, *arguendo,* the court erred by interpreting the deed, that error was harmless. Pursuant to R.C. 2309.59 and Civ.R. 61, this court may not reverse the trial court unless a substantial right is affected and substantial justice is not served. *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 474–475, 21 O.O.3d 285, 296–297, 424 N.E.2d 568, 581; *State ex rel. Avellone v. Lake Cty. Bd. of Commrs.* (1989), 45 Ohio St.3d 58, 62, 543 N.E.2d 478, 482.

 The Flinns argue on appeal, as they argued to the trial court, that this action should have been brought as a declaratory judgment or a quiet title action. However, they do not show how they were prejudiced by the court's proceedings in this action. For approximately a year prior to filing their motion to show

---

1. Appellants did not order the testimony of the third witness transcribed so we cannot review its content.

cause, the exact language of a deed had been a major contention between the Flinns and Sheldons. The Flinns were able to present evidence regarding the parties' intent at the show cause hearing. Before they were required to present that evidence, the hearing was continued for a month, allowing them more time to prepare their case. They now assert they would have other neighboring property owners and more witnesses to the signing of the option agreement to testify. However, at the show cause hearing the Flinns presented the testimony of two witnesses to the option agreement and one neighboring property owner who tapped into the Flinns' spring. Any other testimony in this regard would have been cumulative. If we were to grant the Flinns' assignment of error and remand for further proceedings, there would be little future substantive change from the proceedings which the trial has already held. Civ.R. 61 was adopted to remind reviewing courts that parties are entitled to a fair trial, not one free from error. In this case, the Flinns had a fair opportunity to litigate the interpretation of the option agreement. The Flinns' first assignment of error is overruled.

### Assignment of Error No. II

"The trial court committed error prejudicial to Flinn as the judgment entry journalized on December 9, 1992 was against the manifest weight of the evidence and there was no competent, credible evidence in the record to justify an award to [the] Sheldon[s] of certain permanent easements and to restrict [the] Flinns' pasture easements or rights."

The Flinns' next argument is that the court's decision to award an easement to the water rights and to restrict the pasture rights to Elwyn Flinn was against the weight of the evidence. It is firmly established that judgments supported by some competent, credible evidence going to the essential elements of a case will not be reversed on appeal. Nor should an appellate court substitute its judgment for that of the trial court when competent and credible evidence exists supporting the findings of fact and conclusions of law rendered by the trial court. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 261, 376 N.E.2d 578, 579.

In this case, there was competent, credible evidence to support the court's findings. The Flinns assert that they should have been granted an easement for pasture rights and that Myrtis Flinn also should have been included in the grant of pasture rights. The deed adopted by the trial court provides:

"Grantees agree to grant use of the property herein conveyed for pasture to Elwyn A. Flinn until Grantees build, when the living space for the house, lawn and domestic use will be blocked off from the cattle use area."

Other than changing buyer to grantee and adding "herein conveyed" the trial court's deed is identical to the option and the deed the Flinns submitted to the trial court. We find the option agreement and the Flinns' proposed deed to be competent, credible evidence of the parties' intent regarding pasture rights.

The second issue raised by the Flinns is the court's decision to grant the Sheldons an easement to the water from the Flinns' spring. In the option agreement, the clause granting water rights stated:

"Buyer understands and seller agrees that the water from the spring at S 43° 12' 16" W may be tapped and used on the property to be sold if suitable drinking water cannot be obtained from a drilled well."

The Flinns assert that because the word "easement" is not mentioned, an easement is not created. The Sheldons assert that the option agreement includes an easement because the right to water is provided to the property and not an individual. Therefore, the Sheldons assert the right to water runs with the land and it is permanent, an attribute of an easement rather than a license. See, generally, 36 Ohio Jurisprudence 3d (1982) 395–396, Easements and Licenses, Section 6.

While it is true that the option may be read as creating an easement, we find the nature of the right created in the deed is ambiguous. The remainder of the option is no clearer in defining the water right. Thus, the trial court was correct in looking outside the "four corners" of the document to make its factual determination. *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271.

Two people who witnessed the drafting of the option agreement testified at trial. Elwyn Flinn testified that he would be happy to sign a deed that resolved all the issues. He claimed that his right to the well's water was superior to the rights of the Haleys, the Sheldons' predecessors in interest. According to Flinn, the Haleys were intended to have the same rights as the other property owners to use the well. At least one of the other property owners was granted an easement to the water before the time of the option agreement. Flinn stated that he did not want the Sheldons to have an easement because a prior easement holder had caused damage when he laid water pipes on the Flinns' property. However, other than controlling where the water line was located, Flinn indicated he would allow them to receive water and that he did not want to reserve the right to terminate the Sheldons' use.

Donald Frybarger, a witness to the drafting of the option, also testified. He claimed that the parties did not discuss how water would be provided, only that if it was needed the Flinns would allow the Haleys access to the spring. He confirmed that the Flinns were to have superior rights to the water and that the

pipe line running through the Sheldons' property was in place at the time of the option agreement. All the property owners who use the well are connected to the spring by that pipe line.

■ It is apparent from Frybarger's testimony that the parties had not considered how the Sheldons' property was to receive water, if needed. As the parties did not express a clear intent, the question becomes one of reasonableness. *Inland Refuse, supra.* In this case, the deed the court issued contained the following clause:

"In the event Grantees are unable to obtain suitable drinking water from a well to be drilled on the above described premises, Grantors hereby grant unto Grantees and their heirs, successors and assigns, a permanent easement to lay, maintain, repair, replace and operate a pipeline to the spring located on Grantors' property, or to connect into a pipeline traversing the above described property, depicted as a '30′ water easement' on Exhibit A attached hereto, to take water from such spring for the benefit of the property conveyed hereby. The location of the spring is designated as a 'well' at the beginning of the 30′ water easement shown on Exhibit A."

Thus, the court has awarded an easement to the Sheldons. Based on Elwyn Flinn's testimony that he does not want to terminate the water rights, the past practice of granting easements to the water, and the harsh result of finding the Sheldons held a terminable interest in access to drinking water, the court's determination was reasonable. Finding that the Sheldons held a mere license to use the water would have a strong impact on the marketability of the property. Further, the option agreement provides that the right to use water is given to the property, not an individual. Thus, it seems the most likely intent of the parties was to award the Sheldons' property an easement to water from the Flinns' spring.

After determining the nature of the water right, the court provided a means to gain access to that right. It permitted the Sheldons to either tap into the spring directly or the water line that ran through their property. Either option is reasonable. The other property owners go to the spring and the holding tanks the spring feeds. Allowing the Sheldons to do so would place them on the same footing as the other property owners, which was the parties' intent. They would also be on the same footing if they tapped into the water line on their property as it is shared by all the other property owners. Tapping into the water line on their property would also remove Elwyn Flinn's concern that his property would be damaged by installation of a line from the Sheldons' property to the spring. Allowing the option of where to tap into the water still leaves the parties to find the most feasible means of providing water to the Sheldons, which seems to have been the parties' intent. We cannot find error in the court's decision to award an

easement or its means of providing water. The Flinns' second assignment of error is overruled.

### Assignment of Error No. III

"The trial court committed error prejudicial to [the] Flinn[s] by denying Flinns' motion to dismiss the motion to show cause filed by [the] Sheldon[s] prior to the commencement of the hearing."

The Flinns assert that the motion to show cause should have been dismissed for the reasons set forth in their first two assignments of error. As we have rejected those arguments in their first two assignments, we find them unpersuasive here. The Flinns' third assignment of error is overruled.

The trial court's judgment is affirmed.

*Judgment affirmed.*

COOK, P.J., and QUILLIN, J., concur.