**MURRAY et al., Appellants,**

v.

**LYON et al., Appellees.**

[Cite as *Murray v. Lyon* (1994), 95 Ohio App.3d 215.]

Court of Appeals of Ohio,
Medina County.

No. 2274–M.

Decided June 8, 1994.

216

*Roger R. Ingraham* and *John Yarger,* for appellants.

*Brian J. Halligan* and *Robert E. Dezort,* for appellees.

REECE, Presiding Judge.

Plaintiffs-appellants, Ross and Lois Murray ("the Murrays"), appeal the trial court's judgment involving a cross-parking easement the Murrays share with the defendants-appellees, Robert and Madeline Lyon ("the Lyons"). We affirm.

On March 11, 1991, the Murrays contracted with the Lyons to sell a portion of their property that included a horse barn and stable. The Murrays operate an auction business on their portion of the property, and the Lyons conduct horse shows on their share of the property. A parking lot which existed prior to the sale was divided during the sale, with approximately sixty-five percent of the parking lot remaining on the Murrays' property.

Each party's right to use the parking lot for their customers was an integral part of the real estate transaction between the Murrays and Lyons. The parties incorporated the following clause into their "Buy and Sell" agreement:

"There exists between the horse barn and the auction barn a substantial parking area, a portion which will be transferred to the Buyers [Lyons] and the balance remaining on the property of the Sellers [Murrays]. *It is the intention of all parties that either of them may have the use of the entire parking lot on days when they are conducting their respective businesses.* The agreement to this effect will be in the form of an easement which is attached [to this agreement]." (Emphasis added.)

The initial cross-parking easement attached to the contract provided:

"Buyers [Lyons] will conduct their horse shows on Sundays and normally expect to use said parking area on Sundays. Sellers [Murrays] will conduct their auctions on Saturdays or weekdays and will normally expect to use said parking area for their customers on Saturdays or weekdays. However, both parties recognize that these factors may change. In order to avoid conflict, *a party desiring to use the entire parking area on any given date shall give forty-five (45) days notice to the other party of the date that they intend to use the property, and as to the first notice so given, said party shall be entitled to utilize the same for his purposes, provided that the notice is given in good faith and not for the purpose of abusing the rights herein granted.*" (Emphasis added.)

At closing, the parties executed a second cross-parking easement. That easement was substantially the same except it changed "a party" and "other party" to "Grantee" and "Grantor."

"Buyers [Lyons] will conduct their horse shows on Sundays and normally expect to use said parking area on Sundays. Sellers [Murrays] will conduct their auctions on Saturday or weekdays and will normally expect to use said parking area for their customers on Saturdays or weekdays. However, both parties recognize that these factors may change. In order to avoid conflict, *if Grantees desire to use the entire parking area on any given date they shall give forty-five (45) days notice to the Grantors of the date that they intend to use the property, and if no conflict exists, Grantees shall be entitled to utilize the same for his purposes, provided that the notice is given in good faith and not for the purpose of abusing the rights herein granted.*" (Emphasis added.)

On Saturday, February 15, 1992, activities were held on both properties that required the use of the entire parking area. On February 21, 1992, the Murrays filed a complaint seeking an injunction prohibiting the Lyons from operating horse shows on Saturdays or allowing horses in the Murrays' portion of the parking lot and seeking money damages. The Lyons counterclaimed for malicious and tortious interference of their business and sought a declaratory judgment pursuant to R.C. 2721.03 to determine the parties' rights under the cross-parking easement. The trial court found that the Lyons had exclusive use of the lot on Sundays and the Murrays exclusive use on Saturdays. Also, each party could use the lot on the other party's day by requesting the other party's permission. The court also found that the Lyons' patrons could have their horses in the Murrays' portion of the parking lot the day of the horse shows. The Murrays appeal raising two assignments of error.

## Assignment of Error 1

"The trial court committed plain error by ordering that appellees have exclusive use of the common parking area on Sundays, without the need for notice or

permission and that appellants are to give notice of their intended use of the parking area."

The Murrays assert that the trial court erred by failing to apply the unambiguous language of the easement. As with any written agreement, the primary purpose in construing an easement is to ascertain the parties' intent. 36 Ohio Jurisprudence 3d (1982) 414, Easements and Licenses, Section 25. If the intent is plain from the face of the document, then it is not necessary to resort to rules of construction to determine the easement's effect. *Id.* When the question is the scope of an easement, the court must look to the language of the easement to determine its extent. *Columbia Gas Transm. Corp. v. Bennett* (1990), 71 Ohio App.3d 307, 318, 594 N.E.2d 1, 8. If there is no specific delineation of the easement in the instrument, or if the delineation is ambiguous, then a court may look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement. *Id.; Sheldon v. Flinn* (1993), 89 Ohio App.3d 490, 494–496, 624 N.E.2d 1109, 1112–1113, citing *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271. We will review the court's interpretation of the easement *de novo;* any factual finding of intent or reasonableness will be upheld if we can discover competent, credible evidence that supports the trial court's decision.

It is clear from the buy and sell agreement that the parties intended that a party could use the entire parking lot when that party was conducting business. The agreement stated: "It is the intention of all parties that either of them may have the use of the entire parking lot on days when they are conducting their respective businesses." The cross-parking agreement provided that the Lyons could "normally" use the property on Sundays and the Murrays could "normally" use it on Saturdays and weekdays. In order to avoid conflict, the following provision was inserted:

" * * * if Grantees desire to use the entire parking area on any given date they shall give forty-five (45) days notice to the Grantors of the date that they intend to use the property, and if no conflict exists, Grantees shall be entitled to utilize the same for his purposes, provided that the notice is given in good faith and not for the purpose of abusing the rights herein granted."

The difficulty in interpreting this phrase is the use of the terms "grantee" and "grantor." In this cross-parking easement each party is both giving an easement in their part of the parking lot and receiving an easement in the other party's portion of the lot. Thus, each party is both a grantee and grantor. This is the only paragraph of the cross-parking easement which refers to the parties as grantor or grantee. The parties are defined as Buyer (Lyons) or Seller (Murrays) at the beginning of this easement. In the same paragraph as the notice

clause, those defined terms are used. Using the terms grantor and grantee in this section without defining either creates ambiguity. Further, in this section grantees are referred to as "they" in one portion and as "his" in another. The cross-parking easement uses the plural in referring to who must give notice and the singular in who may use the lot on a given day. Thus, from this language it appears as if both parties are required to give notice.

The following paragraph appears in the cross-parking easement:

"3. The party having given the notice shall be entitled to use said entire common area for the parking for the patrons and customers of the auction and show as herein contemplated."

This paragraph indicates that either party can give notice. Using "patrons and customers of the auction and show" is a strong indicator that the Murrays, the only party holding auctions, would be required to provide notice. However, the parties amended the cross-parking easement from "a party desiring to use the entire parking area" to "if Grantees desire to use the entire parking area." This indicates only one party, the Lyons, was required to give notice. It is also possible that the parties used "grantor" to refer to the Murrays as they were the grantor in the sale of the property. Accordingly, we find the easement to be ambiguous and the court correctly looked outside the "four corners" of the document to make a factual determination of intent and reasonableness. *Sheldon, supra,* 89 Ohio App.3d at 495, 624 N.E.2d at 1112.

As with any factual determination, we will uphold the court's decision if some competent, credible evidence exists to support the court's decision. *Id.* at 494, 624 N.E.2d at 1111–1112. In reviewing the buy and sell agreement and the cross-parking easement, it appears that the parties intended the Lyons to have exclusive use of the parking lot on Sundays. The buy and sell agreement expresses this intent directly, the easement by providing for "normal" days of usage. During the course of the negotiations, the Murrays knew that the Lyons intended to use the parking lot on Sundays. It is doubtful that the Lyons would have purchased the property if their right to use the entire parking lot on Sundays was not exclusive. Further, this is a reasonable attempt to allow each party to successfully conduct the respective business. These indications of intent are competent, credible evidence of the Lyons' exclusive right to use the parking lot on Sundays.

Once it is determined that the Murrays do not have exclusive control of the lot, it is reasonable that some form of notice requirement exists to ensure that no conflicts occur in the use of the lot. The documents themselves, particularly paragraph 3 of the cross-parking easement, indicate that the Murrays are required to give notice. No clear showing of a contrary intent was advanced by the Murrays. Thus, it is reasonable to require the Murrays notify the Lyons that

they wish to use the property on a day the Lyons have exclusive control of the lot.

Further, the Murrays invoked the court's equitable jurisdiction by seeking an injunction. See *Haught v. Dayton* (1973), 34 Ohio St.2d 32, 36, 63 O.O.2d 49, 51–52, 295 N.E.2d 404, 406–407. Once that jurisdiction is invoked, it is within the court's discretion to determine the parties' competing interests in the property. *Ohio Power Co. v. Bauer* (1989), 60 Ohio App.3d 57, 59–60, 573 N.E.2d 780, 783–784. We cannot say the court abused this discretion by finding that the Murrays must provide notice to the Lyons. Accordingly, the Murrays' first assignment of error is without merit.

### Assignment of Error II

"The trial court committed plain error by ordering that horses may be led by a short lead in appellant's parking lot area and that patrons of appellees' horse shows are allowed to tie their horses to vehicles in the parking area and to walk them through the parking area."

As with the notice and exclusive use provisions, the uses the Lyons may make of the parking area were not delineated in the easement. Some portions indicate that the use is only for parking, for instance, paragraph 3 of the cross-parking easement. The buy and sell agreement allows the parties to use the entire parking area without placing any reservations on that use. Nowhere do the parties spell out the exact uses to which the lot may be put. Accordingly, we find the easement is ambiguous as concerns the Lyons' patrons' ability to allow horses in the parking lot.

Competent, credible evidence exists to support the court's finding that horses are permitted in the entire parking area. There is testimony in the record that the Lyons could not conduct their business if horses were banned from the Murrays' portion of the parking area. Thus, the right to have horses on the parking area is a necessary incident to the Lyons' use and enjoyment of their easement. We cannot say the court erred in permitting horses on the Murrays' portion of the parking lot on those days the Lyons are using it. The Murrays' second assignment of error is without merit.

The trial court's judgment is affirmed.

*Judgment affirmed.*

DICKINSON and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.