Plaintiff-appellant, Robert Fulwider, appeals a July 19, 1996 decision by the Fayette County Court of Common Pleas. Appellant brought a suit against defendant-appellee, the city of Washington Court House, seeking to enjoin appellee from constructing a road and replacing a drainage ditch with a nine foot diameter pipe. We affirm.
In April 1995, appellee proposed that a new street be built connecting Gilmore and Storybrook subdivisions within the city of Washington Court House, Ohio. The Storybrook subdivision has only one entrance/exit street to the west and lies north of an open drainage ditch called the East Side Ditch. The Gilmore subdivision lies south of Storybrook and the ditch. The East Side Ditch provides storm water drainage for the northern portion of Washington Court House and empties into the East Fork of Paint Creek.
The proposed street would extend Buckeye Road in the Gilmore subdivision across the East Side Ditch and connect with Glenn Road in the Storybrook subdivision. The Buckeye Road extension would allow an additional entrance for the Storybrook subdivision to the south. The new road would also allow the Gilmore subdivision an entrance/exit street to the north. Because the proposed road would traverse the East Side Ditch, appellee sought to replace the ditch with a storm water pipe.
Residents of the Gilmore subdivision were opposed to the construction of the Buckeye Road extension because they felt it would significantly increase traffic in their subdivision. Appellant, acting on behalf of some of the residents of the Gilmore subdivision, requested an injunction preventing appellee from accepting any bids for construction of the Buckeye Road extension and preventing the installation of the pipe. Appellant also sought a writ of mandamus to force appellee to construct another road exiting Storybrook to the west.
On May 16, 1995, the trial court granted an injunction against appellee prohibiting any construction of the East Side Ditch until appellee complied with Washington Court House Codified Ordinance 1331.12 ("Sec. 1331.12").[1] The court also held that appellant had no standing to enforce any violations by appellee in conjunction with the East Side Ditch. Appellant made a motion for a new trial on May 30, 1995 pursuant to Civ.R. 59. The motion was granted and a new trial was held.
In the second trial, the trial court again found that appellee was required to comply with Sec. 1331.12. The trial court also found that appellant had standing, but concluded that appellant failed to show that appellee violated a duty to maintain the East Side Ditch by seeking to replace it with a storm water pipe. The court rejected appellant's petition for writ of mandamus, finding that appellee was under no duty to construct a road that would exit the Storybrook subdivision to the west. Appellant appeals the decision by the trial court and asserts two assignments of error:
Assignment of Error No. 1:
 THE COURT BELOW ERRED BY NOT REQUIRING APPELLEE TO COMPLY WITH ITS OWN CITY ORDINANCES.
Appellant argues that the court has not required appellee to comply with three city ordinances: Washington Court House Codified Ordinances 1195.11(c), 410, and 1331.05(j). When a taxpayer challenges the actions of a city as being contrary to law, a reviewing court "should not substitute its judgment for that of the trial court where the record contains competent and credible evidence supporting findings of fact and conclusions of law rendered by a trial court judge." Hubbard ex rel. Creed v. Sauline (1996), 74 Ohio St.3d 402, 406, following Seasons Coal Co. v. Cleveland (1984), 10 Ohio St. 77, 80.
Appellant first argues that appellee did not follow Washington Court House Codified Ordinance 1195.11(c) ("Sec. 1195.11(c)"), which deals with a special type of street called a marginal access street. Appellant's argument was dismissed by the trial court because Sec. 1195.11(c) was repealed by appellee in 1989. Appellant did not present an argument why such repealed ordinance is applicable to appellee. We therefore affirm the court's decision that appellee did not have to follow Sec. 1195.11(c).
Second, appellant alleges that appellee did not follow Washington Court House Codified Ordinance 410 ("Sec. 410") because the Buckeye Drive extension would encourage through traffic to the interior of both the Storybrook subdivision and the Gilmore subdivision.[2] The court found that appellee did not violate Sec. 410 because the purpose of the street extension is to permit access to Storybrook from a second entrance. Appellee has a public safety interest in a second entrance because emergency vehicles cannot reach the Storybrook subdivision in the event that the western entrance is closed. The court also observed that although Sec. 410 requires that traffic through a subdivision shall be "discouraged," it does not say that through traffic should be "prevented." The opening of a second exit from Storybrook into Gilmore would increase traffic, but the court reasoned that the increased traffic does not automatically create a violation of Sec. 410. We find that the court's interpretation of Sec. 410 was reasonable and supported by competent and credible evidence.
Appellant also argues that appellee did not follow Washington Court House Codified Ordinance 1331.05(j) ("Sec. 1331.05(j)") by filling in the East Side Ditch. Sec. 1331.05(j) defines "floodway" and does not require any action on the part of appellee.[3] The trial court held in both trials that appellee was required to follow Sec. 1331.12 because the construction of Buckeye Drive was in a "floodway." A permit for construction was granted to appellee on September 5, 1995. Appellant's argument that the trial court erred by not requiring appellee to comply with Sec. 1331.05(j) is therefore overruled for two reasons: (1) the trial court required appellee to comply with Sec. 1331.12, and (2) appellee complied with Sec. 1331.12 by obtaining a permit.
Having reviewed the record, we find that the trial court did not err by finding that appellee did not violate any of the ordinances at issue. Accordingly, we overrule appellant's first assignment of error.
Assignment of Error No. 2:
 THE COURT BELOW ERRED IN ALLOWING APPELLEE TO AVOID THE TERMS OF AN EASEMENT.
Appellant claims that appellee would violate the terms of an easement by installing a nine foot diameter pipe in the East Side Ditch. The easement provides that appellee must:
 [M]aintain said ditch in a proper manner so as to insure the free flow of water therein, to keep said ditch free from obstructions, and to mow the sides of said ditch and the unexcavated portion of said easement and to mow the same as often as is necessary to prevent the unsightly growth of grass or weeds and to prevent the seeding of noxious weeds.
Appellant asserts that a pipe is an "obstruction," and that the easement requires mowing and maintenance of the ditch. Appellant argues that the installation of a pipe and the filling of the ditch with dirt violates the terms of the easement.
A trial court's interpretation of an easement will be reviewed de novo, but any factual findings of reasonableness will be upheld if the reviewing court can discover competent, credible evidence that supports the trial court's decision. Murray v. Lyon (1994), 95 Ohio App.3d 215, 219. "As with any written agreement, the primary purpose in construing an easement is to ascertain the parties' intent." Id.
The trial court held that appellant had not shown that appellee violated any duty found in the easement. The court found that the intent of the easement was to ensure the free flow of water by keeping the ditch free of obstructions. The court was able to rely upon the testimony of Habib Tarafder, the city engineer of Washington Court House. Tarafder testified that the East Side Ditch's purpose is to provide storm water drainage for the northern portion of Washington Court House. Tarafder asserted that this purpose would be better served by a storm water pipe. A closed pipe would allow more water to flow through it because it has the advantage of a smoother surface, which allows water to flow through it at a higher rate. A closed pipe is also easier to maintain because an open ditch requires frequent maintenance to keep it free of plants and debris.
We find that the trial court's interpretation of the easement was reasonable. The testimony of Tarafder was competent, credible evidence that the court could properly rely upon in holding that it was not against the purpose of the easement to allow appellee to install a sewer pipe. Appellant's second assignment of error is accordingly overruled.
Judgment affirmed.
POWELL, P.J., and KOEHLER, J., concur.
[1] Sec. 1331.12 requires a development permit before construction or development begins within any area of special flood hazard.
[2] Sec. 410 "Street Design" reads: The arrangement, character, extent, width, grade, construction, and the location of all streets shall conform to the Major Thoroughfare Plan of the City of Washington, or subsequent amendments thereto, and shall be considered in their relation to existing and planned streets, topographical conditions, and public convenience and safety; and in their appropriate relation to the proposed uses of the land to be served by such streets. The street pattern shall discourage through traffic in the interior of a subdivision. The subdivider shall provide within the boundaries of the subdivision plat, the ncesssary right-of-way for the widening, continuance, or alignment of such streets in conformity with the Major Thoroughfare Plan.
[3] Sec. 1331.05(j) reads: "Floodway" means the channel of a river or other watercourse and the adjacent land area that shall be reserved in order to discharge the base flood without cumulatively increasing the water surface elevation more than five-tenths foot.