OPINION
This appeal emanates from a final judgment of the Portage County Court of Common Pleas. Appellants, John J. and Janet Andrulis, appeal from a decision of the trial court declaring that appellees, Don and Karen Gans, posses an eleven-foot wide easement on their property with the right to construct and maintain a dock.
The following facts are relevant to this appeal. Appellants own property adjacent to Lake Stewart in Franklin Township, Portage County, Ohio. Appellees also own property in Franklin Township that is adjacent to appellants and is separated from Lake Stewart by appellants' property. Both parties are owners of land that was at one time owned by Warren E. Newton ("Newton").
When appellees purchased their property in 1989, Newton still lived in the home currently occupied by appellants. The record shows that at the time of the purchase, appellees were aware that their predecessors in interest had rights of access to Lake Stewart, including access to a particular dock located on the lake.[1]
Although appellees had free access to Lake Stewart through Newton's property, the couple approached Newton in 1990 to formally purchase an easement. The easement was drafted by Newton's attorney, Donald Mitchell, ("Mitchell"), and was recorded on April 20, 1990. The easement provided:
 "NOW comes Warren E. Newton, a single person, and does hereby grant and assign to Don and Karen Gans, their heirs and assigns, for One Dollar ($1.00), a footpath easement of ingress and regress [sic.] to Stewart Lake over the following described premises as long as and provided that said Don and Karen Gans, their heirs and assigns, do pay their fair share of maintenance and upkeep as determined by Warren E. Newton, his heirs and assigns, for Stewart Lake and the dock on Stewart Lake.
 "The legal description of said Easement is as follows:
 "In the Township of Franklin, County of Portage and State of Ohio and known as being part of Lot 66 in Franklin Township and further described as follows:
 "Containing 0.067 of an acre of land, be the same more or less, and reserving a three foot wide walkway easement along the south side of said land; said easement is further described as follows:
 "Starting at the southeast corner of Newton Road in the north line of Lot 66; thence S 0 [degrees] 26' W 11.00 feet to the northwest corner of said easement and the true place of beginning; thence S 89 [degrees] 34' E 210.00 feet; thence S 0 [degrees] 26' W 3.00 feet; thence N 89 [degrees] 34' W 210.00 feet to an iron pipe; thence N 0 [degrees] 26' E 3.00 feet to the beginning. As surveyed in February, 1990, by Edward J. Collier, Registered Surveyor No. 7141."
 Appellees believed that the easement gave them access to an old gravel driveway located on Newton's property measuring approximately fourteen feet wide and two hundred ten feet long. The driveway began at the end of the road on which the parties' properties are located and terminated a short distance from Lake Stewart's shoreline. Appellees were also under the impression that the easement gave them access to the west dock even though the easement concluded some distance from its beginning.
During the time Newton owned the property adjacent to the lake, appellees regularly accessed the lake from the old gravel driveway and the west dock. In addition, appellees contributed to the repair of the dock and even extended it by adding a floating section at the end of the original.
After Newton passed away in 1993, appellants purchased the property in 1995. Almost immediately, the parties began disagreeing over the scope and extent of the easement. Appellants believed that the easement did not include the entire gravel driveway, but instead, was a much smaller pathway that ended near the shoreline. Moreover, appellants also maintained that the easement did not include the use of the west dock.
Eventually, the disagreement escalated into serious animosity. On February 27, 1996, appellees filed a quiet title action against appellants in the Portage County Court of Common Pleas. In addition to the quiet title action, appellees also asked the court for a temporary restraining order prohibiting appellants from excluding or intimidating them when they tried to access the lake via the old gravel driveway and the west dock. Furthermore, appellees sought damages for appellants' alleged intentional infliction of emotional distress.
The parties ultimately filed competing motions for summary judgment. Appellants argued that appellees had mistakenly concluded that the property referenced in the easement as "[c]ontaining 0.067 of an acre" was the description of the easement, when it was, in fact, a description of appellants' property upon which a three-foot wide easement is located. Furthermore, appellants claimed that the easement did not mention access to the west dock, and even if it did, appellees had breached a material term of the easement by failing to contribute to the maintenance of the dock as required.
In their motion for summary judgment, appellees asserted that the parties to the easement intended that appellees would access Lake Stewart by way of the old gravel driveway and the west dock. Appellees also argued that the easement was ambiguous on its face and suggested that the trial court consider parol evidence on this matter.
On April 3, 1997, the trial court issued a judgment entry on the cross-motions for summary judgment. The trial court awarded summary judgment in favor of appellants on the issue of the scope and extent of the easement, but denied summary judgment on the issues of the alleged material breach in the terms of the easement and appellees' claim for intentional infliction of emotional distress.
Appellees appealed the trial court's judgment with respect to its finding on the scope and extent of the easement. In reversing the trial court's judgment, we determined that the easement was unclear and ambiguous with regard to the dimensions of the easement, and on how appellees were to exercise their right of access to Lake Stewart. As a result, we reversed the trial court's judgment and remanded the matter so that the court could take additional evidence and clarify the ambiguous terms of the easement. Gans v. Andrulis (Apr. 3, 1998), Portage App. No. 97-P-0043, unreported, 1998 WL 258408.
On remand, the case proceeded to a bench trial. After three days of testimony, the trial court issued a judgment entry on November 16, 1999 in which it made the following findings: (1) the easement gave appellees the right to use a strip of land fourteen feet wide extending from Newton Road into Lake Stewart, less a strip of land three feet wide reserved for Newton; (2) the intended purpose of the easement was to grant appellees access to and the use of Lake Stewart for their enjoyment; and (3) use of a dock was necessary to fish or board a boat because of the mud, undergrowth, and shallow water. Based on these findings, the trial court concluded that appellees had an eleven-foot wide easement for the purpose of unimpeded ingress and egress to Lake Stewart. Moreover, the trial court also concluded that the parties to the easement had intended to grant appellees the use of the existing dock, or in the alternative, the right to construct and maintain a new dock on the easement area.[2]
From this judgment entry, appellants filed a timely notice of appeal with this court. They now assert the following assignments of error for our review:
 "[1.] The trial court erred as a matter of law when it determined that Newton reserved a three foot easement for himself over his property.
 "[2.] The Trial Court erred as a matter of law in allowing Attorney Donald Mitchell to testify as to his deceased client's intentions.
 "[3.] The Trial Court's determination that the Appellants' have an 11 foot easement is wholly without support in the record and is against the manifest with of the evidence.
 "[4.] The Trial Court committed an error of law and abused its discretion in decreeing that Appellees have the right to construct a dock where the Easement meets the lake."
 Appellants' first, third, and fourth assignments of error all involve the trial court's findings with respect to the scope and extent of the easement. As a result, we will consider them in a consolidated fashion.
An easement is a nonpossessory interest in land that entitles the owner of the dominant estate to limited use of the serviant estate.Consumeracq, Inc. v. Stiffey (Apr. 26, 2000), Lorain App. No. 99CA007361, unreported, at 5, 2000 Ohio App. LEXIS 1803. When a dispute arises over the scope and extent of an easement, the primary purpose in construing the interest is to ascertain the intent of the parties.Murray v. Lyon (1994), 95 Ohio App.3d 215, 219. Generally, this will be accomplished by looking at the text of the easement, Id., citing ColumbiaGas Transm. Corp. v. Bennett (1990), 71 Ohio App.3d 307, 318, and if the intent is plain on the face of the instrument, then it is not necessary or permissible to resort to rules of construction or parol evidence to determine the easement's effect. Murray at 219. In other words, if an easement is clear and unambiguous, then its interpretation is a matter of law, and there are no issues of fact to be determined. Inland RefuseTransfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322.
If, however, the easement lacks a specific description in the instrument, or if it is ambiguous, then a court may look to other circumstances to determine the intent of the parties. Murray at 219. In those situations where a term cannot be determined from the four corners of an agreement, a factual determination of intent or reasonableness may be necessary to supply the missing information. Ohio Edison Co. v.Gilmore (1995), 106 Ohio App.3d 6, 11.
As we already discussed when this case was originally before us, the terms in the easement are in conflict, and as a result, the easement is unclear and ambiguous. On remand, we instructed the trial court to consider parol evidence in an effort to clarify the intent of the parties on the scope and extent of the easement. The trial court having done so, appellants now argue that the trial court abused its discretion in giving appellees a fourteen-foot wide easement, minus a three-foot wide easement purportedly reserved by Newton, along with the right to construct a new dock with which to enter Lake Stewart.
First, appellants maintain that the trial court erred when it found that Newton had reserved a three-foot easement for himself. Appellants claim that it is legally impossible for a person to have an easement on his or her own land, and that parties cannot impose an easement on another easement.
Appellants are only partially correct. It is generally accepted that absent an express restriction in the easement, the owner of the servient estate may use his or her land in any way he or she wishes so long as his or her conduct does not interfere with the dominant estate owner's use of the easement. Thus, to allow a landowner to create an easement on his or her own land would be legally redundant because the servient estate owner still holds title to the property. 36 Ohio Jurisprudence 3d (1982) 389-390, Easements and Licenses, Section 2. Similarly, there is also some authority to support the proposition that an easement cannot be imposed upon an easement. Id. at 390.
Having said that, however, as we recognized in our first decision, it is common to use the word "reserve" in an easement description when the intention is to retain for the grantor, and not the grantee, access to part of the land subject to an easement. Gans at 6. For example, if a property owner gives an electric company an easement to run wires over his or her land, the property owner may wish to reserve for his or her own use the ground beneath the wires.
In the case at bar, the trial court made the following finding:
 "The easement granted to [appellees] by document dated April 11, 1990 granted to [appellees] the right to the use of a strip of land 14 feet wide extending from Newton Road into Stewart Lake and containing .067 acres of land, less a strip of land three feet wide reserved to the grantor in such easement. The grantor being one, Warren E. Newton, who was [appellants] predecessor in title."
 From this factual finding, appellants argue that the trial court erroneously determined that Newton created an easement for himself on his own property, which, in turn, resulted in an easement being imposed upon an easement. That is not entirely true. The trial court's judgment entry clearly shows that the court concluded Newton had retained a reservation at the time he granted appellees the easement. This conclusion is supported by the evidence introduced at trial which showed that Newton was in the process of selling several pieces of property and wanted to retain a way for himself to continue using the lake. Accordingly, appellants' first assignment of error has no merit.
Next, appellants claim that the trial court's finding that appellees have an eleven-foot easement is without support in the record and against the manifest weight of the evidence. We begin this discussion by noting that it is well-established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. As the trier of fact is in the best position to view the witnesses and their demeanor, in making a determination that a judgment is against the manifest weight of the evidence, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact.Shemo v. Mayfield Heights (2000), 88 Ohio St.3d 7, 10; Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226. In other words, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." State ex rel. Celebrezze v. EnvironmentalEnterprises, Inc. (1990), 53 Ohio St.3d 147, 154.
Here, no one disputes that Newton intended to give appellees an express easement providing the couple access to Lake Stewart. Rather, the parties disagree as to the scope and extent of the easement. Specifically, appellants maintain that the easement in question only gives appellees a three-foot wide path upon which to enter the lake, and that there is no right to use a dock. Appellees, however, counter by arguing that the facts surrounding the granting of the easement demonstrate that Newton intended to give them an easement that covered the entire old gravel driveway leading from Newton Road to Lake Stewart, which is approximately fourteen feet wide and two hundred ten feet long.
At trial, both sides presented substantial evidence in support of their respective positions. From this evidence, the trial court ultimately concluded that the easement gave appellees the use of a fourteen-foot wide easement extending to the lake, subject to a three-foot wide reservation retained by Newton. This conclusion was supported by the testimony of appellees, several neighboring landowners, prior owners of appellees' property, and the attorney who drafted the easement.
Appellants, however, maintain that there in no evidence in the record with respect to why the term "reserve" is used in the easement. However, they assert that the use of the term "reserving" in the deeds created by Edward J. Collier, the person who surveyed all of Newton's properties prior to his death, sheds light on the issue. Specifically, appellants argue that Mitchell simply used the description contained in those deeds without any thought as to its meaning and effect.[3]
In addition, appellants also claim that the evidence demonstrated that Newton wanted to add the fourteen-foot wide parcel to what is now appellants' property so that a new owner would have complete control over the sidewalk adjacent to the house. Based on this assumption, appellants argue that it would completely defeat Newton's intent in combining the properties to grant appellees an eleven-foot easement across that sidewalk when a three-foot easement would require appellees to walk along the property line instead of across the sidewalk.
This court has conducted an exhaustive review of the testimony given at the trial, as well as the exhibits submitted into evidence. While appellants certainly present a plausible argument in support of their position, our review is limited in cases such as this to a determination of whether the trial court's judgment was supported by competent, credible evidence, which in this case it was. As a result, appellants' third assignment of error has no merit.
In their fourth assignment of error, appellants argue that that trial court abused its discretion in concluding that the easement gave appellees the right to either use the existing dock, or in its absence, the right to construct and maintain a new dock on the easement area. According to appellants, the easement clearly does not provide the right to use any particular dock to access the lake. In fact, they believe that Newton gave appellees a license, and not an easement, to use the west dock, and that this license ended when Newton passed away.
Generally, absent a specific provision in the easement defining the easement's scope, the scope of the easement should be interpreted to include all uses which are reasonably necessary and convenient to carry out the purpose of the easement. Gans at 5. Stated differently, an unrestricted grant of an easement gives the grantee all such rights as are necessary to the reasonable and proper enjoyment thereof. Id.
Both parties agree that the easement in question does not specifically grant appellees an easement to use a dock. However, the conveyance does contain specific language conditioning appellees' rights of access to the lake on their contribution to both the maintenance of the lake "and the dock on Stewart Lake." Appellees maintain that if they were not permitted the use of a dock, their easement would be meaningless because they would have no way to access the lake. In support, they presented testimony demonstrating that due to the long-standing shallowness of the lake at that location, as well as the condition of the shoreline, it would be almost impossible to safely enter the lake without a dock.
The evidence at trial also showed that the referenced west dock had been dismantled by appellants after falling into a state of disrepair. From all of this, the trial court found "that because of the mud, undergrowth and shallow water, use of a dock was necessary to fish or board a boat." As a result, the court concluded that appellees have the right to construct and maintain a dock into the lake from the easement area.
Again, we are guided by the presumption that absent a specific provision in the easement defining its scope, the scope of the easement should be interpreted to include all uses which are reasonably necessary and convenient to carry out the purpose of the easement. Gans at 5. Here, it appears from the record that for appellees to properly enjoy their easement, specifically to have access to Lake Stewart, a dock is necessary. Moreover, appellants provided no evidence to rebut that introduced by appellees concerning the condition of the lake and the difficulty associated with entering it from the shore without a dock. Thus, we cannot say that the trial court abused its discretion in giving appellees the option to construct a new deck with which to access Lake Stewart.
Having said that, however, we agree with appellants that some restrictions on the construction of a new dock are necessary to curtail further litigation and limit the burden on appellants. As a result, we are modifying the trial court's judgment. Specifically, we order that any dock that is subsequently built on appellees' easement can be up to the size of the west dock previously referenced in the deed. Appellants' fourth assignment of error has merit to the extent indicated.
Finally, in their second assignment of error, appellants argue that the trial court erred as a matter of law by allowing Mitchell to testify concerning Newton's intent in giving appellees the easement. They maintain that R.C. 2317.02, which governs the attorney/client privilege, prevents an attorney from testifying about confidential matters, when the client is deceased, without the consent of the surviving spouse or the administrator of the deceased's estate.
In Ohio, the General Assembly has codified the common-law attorney-client privilege in R.C. 2317.02 which states in pertinent part:
 "The following persons shall not testify in certain respects:
 "(A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client * * *[.]"
 The Supreme Court of Ohio has observed that the attorney-client privilege is "founded on the premise that confidences shared in the attorney-client relationship are to remain confidential." Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 660. In other words, "the mere relation of attorney and client does not raise a presumption of confidentiality of all communications made between them." Id. at 660-661. Instead, a determination of whether a communication made by a client to an attorney is privileged depends on the circumstances surrounding the exchange. Lemley v. Kaiser (1983), 6 Ohio St.3d 258, 264, quoting In re Jacqueline F. (1979), 47 N.Y.2d 215, 222. At trial, the burden of showing that certain testimony should be excluded under the attorney-client privilege is on the party seeking to exclude it. Lemley at 263-264.
Appellants argue that while the facts actually included in the easement instrument are not confidential, any information Newton provided Mitchell relating to his intent in giving appellees the easement is privileged. Thus, they argue that the trial court should have prevented Mitchell from divulging it at trial.[4]
After reviewing Mitchell's testimony, we conclude that, although a close call, the trial court did not abuse its discretion in admitting it. The record shows that Mitchell never testified as to any privileged communications between him and Newton. Rather, he merely referred to what he believed he was creating when he drafted the easement, which consisted primarily of his own personal observations and inferences. More importantly, when specifically questioned about the scope and extent of the easement, he was unable to recall any discussion he had with Newton on that issue.
Furthermore, even if the trial court should have found that the attorney-client privilege was applicable, Mitchell's testimony was repetitive of that of several other witnesses at trial. Thus, appellants have failed to show how its inclusion prejudiced their case. Accordingly, appellants' second assignment of error is without merit.
Based on the foregoing analysis, the judgment of the trial court is modified and affirmed as modified.
______________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] The parties refer to this dock throughout the proceedings as the "west dock".
[2] The trial court found in favor of appellants on appellees' claim of intentional infliction of emotional distress. However, neither party has appealed this portion of the trial court's judgment.
[3] At trial, Mitchell testified that he had nothing to do with the legal descriptions contained in the easement and that he just used what was given to him. After reviewing the documents entered into evidence, however, it is obvious that the descriptions came from the deeds created by the surveyor.
[4] Appellants objected to this testimony at trial.