DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant S. Keith Graves appeals from the judgment of the Summit County Court of Common Pleas that granted Plaintiff-Appellee Tracy Smead a permanent injunction. This Court affirms.
 I {¶ 2} Graves owns property located at 404 Crystal Lake Road in Bath. In 1992, Graves sold two parcels adjacent to his property to Tracy and Michael *Page 2 
Smead.[1] Parcel One included property on which a home was located and was roughly 1.6 acres. Parcel Two consisted of .72 acres and included a 629-foot driveway extending east to west from Crystal Lake Road. According to both Graves and Smead, Parcel Two was included in the purchase to satisfy the zoning requirements of Bath.
 {¶ 3} As this 629-foot driveway approaches the portion of Parcel One on which Smead's home sits, it becomes a circular driveway. Following the circular driveway to the north, one would remain at all times on Smead's property and end at her home. Continuing west on the circular portion of the driveway, one would enter Graves' property before the circular drive returns to Smead's property near her home. It is this circular portion of the driveway that is at issue in this matter.
 {¶ 4} On August 23, 1992, shortly after the sale of Parcels One and Two, Smead and Graves entered into a Joint Driveway Agreement ("the Agreement"). The Agreement noted that there was a "common driveway which serves as access to both" parties' parcels. The Agreement went on to delineate the parties' rights and obligations with respect to the common driveway and indicated that the driveway was shown graphically on the attached mortgage location survey.
 {¶ 5} Following her divorce, Smead was awarded Parcels One and Two. However, in order to satisfy the divorce decree provisions, Smead believed she *Page 3 
needed to sell the parcels. She placed the property up for sale with a relative, Gary Smead. After noticing that the property was for sale, Graves sent Gary Smead a letter referencing the circular driveway and stated that he would "be taking back the use of this area[.]" Smead then briefly took the house off the market before placing it for sale a second time. After Smead placed the home for sale a second time, Graves erected a fence on his property across the circular drive, preventing Smead from using a portion of the circular driveway.
 {¶ 6} On September 21, 2005, Smead filed suit against Graves, seeking a permanent injunction requiring Graves to remove the fence. Smead also alleged that Graves' actions were taken maliciously to devalue her property.[2] Graves counterclaimed, seeking a declaration of the parties' rights under the Agreement. The matter was heard before a magistrate. At the conclusion of the evidence, the magistrate determined that the circular portion of the driveway was included under the Agreement and found that a permanent injunction should issue requiring Graves to remove the fence. Following objections to that decision, the trial court agreed with the magistrate and issued a permanent injunction. Graves timely appealed from the trial court's judgment. This Court dismissed the appeal because Smead's monetary claims remained outstanding. Graves then requested and received Civ.R. 54(B) certification from the trial court. Graves now timely *Page 4 
appeals the trial court's grant of the permanent injunction, raising two assignments of error for review.
 II ASSIGNMENT OF ERROR I "THE ISSUANCE OF A PERMANENT INJUNCTION WAS ERRONEOUS BECAUSE THERE WAS NO EVIDENCE PRESENTED THAT APPELLEE HAD SUFFERED IMMEDIATE AND IRREPARABLE HARM AND DID NOT HAVE AN ADEQUATE REMEDY AT LAW."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE CIRCULAR PORTION OF THE ASPHALT DRIVEWAY IN FRONT OF APPELLEE'S HOME WAS NOT PART OF THE JOINT DRIVEWAY AGREEMENT BETWEEN THE APPELLANTS AND APPELLEE."
 {¶ 7} As Graves' first and second assignments of error are interrelated, we will address them together. In both of his assignments of error, Graves contends that the trial court erred when it issued a permanent injunction. We disagree.
 {¶ 8} This Court reviews the granting of an injunction by a trial court under an abuse of discretion standard. Perkins v. Quaker City
(1956), 165 Ohio St. 120, 125.
 "Injunction is an extraordinary remedy equitable in nature, and its issuance may not be demanded as a matter of strict right; the allowance of an injunction rests in the sound discretion of the court and depends on the facts and circumstances surrounding the particular case[.]" Id. at syllabus. *Page 5 
"The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 9} A permanent injunction is an equitable remedy that will be granted only where there will be immediate and irreparable injury to the complaining party and there is no adequate remedy at law. Lemley v.Stevenson (1995), 104 Ohio App.3d 126, 136. "The purpose of an injunction is to prevent a future injury, not to redress past wrongs." Id. In an action for a permanent injunction, the plaintiff must prove his or her case by clear and convincing evidence. In re Petition toAnnex 320 Acres to the Village of S. Lebanon (1992), 64 Ohio St.3d 585,591. "Clear and convincing evidence" has been defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 10} Graves first argues that the trial court erred in its determination that Smead demonstrated irreparable harm. Irreparable harm exists where "there is no plain, adequate, and complete remedy at law, and [where] money damages would be impossible, difficult, or incomplete." Crestmont Cadillac Corp. v. Gen. Motors Corp., 8th Dist. No. 83000, 2004-Ohio-488, at ¶ 36. Upon our review, we find no abuse of discretion in the trial court's determination. *Page 6 
 {¶ 11} The law is well settled that injunctive relief is available to the owner of an easement against an unwarranted interference with an obstruction of the easement by the owner of the fee. Langhorst v.Riethmiller (1977), 52 Ohio App.2d 137, 141; see, also, Ormsby v.Transcontinental Oil Gas, Inc. (Sept. 17, 1997), 9th Dist. No. 18063, at *6. As the parties' Agreement effectively created a right-of-way, a form of easement, we find that precedent regarding easements is applicable to the facts herein. See Cydrus v. Horton (Dec. 10, 1998), 4th Dist. No. 98CA2406, at *3 (noting that a right-of-way is the right to pass over another's land and is an easement).
 {¶ 12} In Langhorst, the court affirmed the grant of injunctive relief, stating:
 "It is difficult to perceive of anything that would more clearly obstruct an easement for ingress and egress than the placement of a fence down the middle of the easement or on the easement property line completely excluding appellee from access to the easement." Id. at 139.
The Langhorst court found that because the owner of the easement would not be able to enjoy her easement unless the trial court granted injunctive relief, such relief was appropriate. Id. at 141.
 {¶ 13} We are presented with similar facts herein. Absent the issuance of an injunction, Smead would not be able to enjoy her rights under the Agreement. Moreover, based upon the unique rights at issue to a circular driveway, we agree with the trial court that determining monetary damages for Graves' violation *Page 7 
would difficult, if not impossible. In challenging the trial court's determination, Graves has repeatedly asserted that he has not interfered with Smead's right of ingress and egress. Graves, however, ignores the fact that his actions have eliminated Smead's right to the use of the circular portion of the driveway in its entirety. Furthermore, we have found no authority to suggest that injunctive relief is only available for an easement holder if the easement is for the purposes of ingress and egress. Consequently, we find no abuse of discretion in the trial court's determination that Smead demonstrated irreparable harm.
 {¶ 14} Graves also argues that the Agreement which created the easement does not cover the circular driveway.
 "As with any written agreement, the primary purpose in construing an easement is to ascertain the parties' intent. If the intent is plain from the face of the document, then it is not necessary to resort to rules of construction to determine the easement's effect. When the question is the scope of an easement, the court must look to the language of the easement to determine its extent. If there is no specific delineation of the easement in the instrument, or if the delineation is ambiguous, then a court may look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement. We will review the court's interpretation of the easement de novo; any factual finding of intent or reasonableness will be upheld if we can discover competent, credible evidence that supports the trial court's decision." (Internal citations and emphasis omitted.) Murray v. Lyon (1994), 95 Ohio App.3d 215, 219.
Moreover,
 "[i]n the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another *Page 8 
construction that would give it meaning and purpose, then the latter construction must obtain." Farmers' Natl. Bank v. Delaware Ins. Co. (1911), 83 Ohio St. 309, syllabus.
Based upon the above, we review the trial court's determination that the Agreement entered into by the parties included the circular portion of the driveway.
 {¶ 15} In concluding that the trial court properly determined the scope of the Agreement, we are persuaded by the language in the Agreement itself. The Agreement provides in pertinent part as follows:
 "WHEREAS, the parties hereto desire to establish definitive provisions of record regarding the portions of the driveway located on the southwesterly side of the Smead parcel, and on the northeasterly side of the Graves parcel, which portions of said driveway are sometimes hereinafter collectively called the `drive.'"
Graves' proffered interpretation of this provision is directly at odds with the plain language of the above provision. Graves asserts that the Agreement covers only the straight 629-foot long stretch of the driveway leading to the respective parcels. This portion of the driveway, however, is located entirely on Smead's property. Consequently, the interpretation offered by Graves ignores the reference to the circular portion of the driveway located "on the northeasterly side" of Graves' property.
 {¶ 16} Graves' interpretation also suffers from other flaws. First, the Agreement repeatedly references "portions" of the driveway and even defines a term to refer to those multiple "portions" collectively. Graves, however, asserts *Page 9 
that the Agreement refers to only the 629-foot portion of the asphalt on the Smead property. This explanation again is contradicted by the plain language the parties used in the Agreement.
 {¶ 17} Finally, Graves' interpretation would vitiate another provision of the Agreement. The Agreement states that it was made for the parties' "mutual advantage" and that each party will "be responsible for maintaining and repairing the portion of drive located on his, her, or their respective parcel[.]" Under Graves' interpretation, this provision would have no meaning as the sole property at issue would be located on Smead's property.
 {¶ 18} We are also persuaded that the Agreement covers the circular driveway based on the mortgage location survey the parties incorporated by reference into the Agreement. The survey has the 629-foot driveway and the circular driveway demarcated with the same shading. Additionally, the survey notes as follows:
 "Subject's asphalt drive encroaches over southwesterly property line about 13' and 19' as shown."
Graves' interpretation would have this Court ignore the survey's markings because it was not prepared specifically for the Agreement. Graves, however, ignores that the parties' voluntarily chose to incorporate the survey by reference into the Agreement and filed the survey along with the Agreement. As the survey graphically does not distinguish between the circular driveway and the 629-foot *Page 10 
driveway, it supports our above-analysis that the parties intended to include both "portions" of the driveway.
 {¶ 19} We also find several of the undisputed facts of this matter relevant to analyzing the parties' intent. The driveway as described herein, including the 629-foot drive and the circular drive, existed in their current conditions at the time Graves initially bought the property and when he sold the property to Smead. For more than 13 years, Smead used the circular driveway without objection. It was not until after Smead divorced Graves' brother-in-law and sought to sell her property that Graves contested her use of the circular drive. This lengthy period of acquiescence by Graves in Smead's use of the circular driveway supports our conclusion that the Agreement covered that portion of the driveway.
 {¶ 20} Finally, Graves asserts that concluding that the Agreement covers the entire asphalt driveway
 "would create an absurd result. If the * * * Agreement included all portions of the asphalt, Graves would be permitted to continually drive (24 hours a day) on the asphalt area immediately in front of, to the side of and behind Smead's residence[.]"
Graves' assertion, however, is unfounded. The Agreement states that the drive will used "as a means of ingress and egress on foot or in vehicle, to and from the parcels[.]" Smead's use of the circular driveway would be consistent with a use of ingress and egress to her parcel. However, Graves' suggested use of the drive directly in front of and behind Smead's home would be inconsistent with using the drive for "ingress and egress" to his parcel. Consequently, while the Agreement *Page 11 
covers the entire asphalt driveway, the parties' rights to the use of those portions has been limited. As Graves' suggested use would fall outside the Agreement, his assertion that the result of the trial court's interpretation is "absurd" is misplaced.
 {¶ 21} Based upon our review, we find no error in the trial court's determination that the Agreement covered both the circular driveway and the 629-foot driveway. Graves' assignments of error, therefore, lack merit.
 III {¶ 22} Graves' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 12 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
SLABY, P. J., DICKINSON, J., CONCUR
[1] Tracy and Michael are now divorced and Tracy is the sole owner of Parcels One and Two.
[2] Smead's monetary claims are unresolved and are not the subject of this appeal. *Page 1