[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal and cross-appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, in a dispute over property damages allegedly cause by electric utility companies repairing storm damaged electric poles and lines. Because we conclude that the trial court erred during pretrial and trial proceedings, we reverse in part and affirm in part.
 {¶ 2} Appellee/cross-appellant, Michael Bayes ("Bayes"), sued appellants/cross-appellees, Toledo Edison, First Energy, and Ohio Edison for damages he claims were caused when utility employees entered his property to repair electric poles and lines damaged by a storm. For ease and clarity in discussion, all three electric companies may at times be referred to collectively as "the Utilities."
 {¶ 3} Before arriving at the property and beginning the repairs, Jim Gill, a Toledo Edison supervisor, asked to use Bayes' driveway and property next to a pond to reach damaged poles. After Gill assured Bayes that Toledo Edison would repair any property damage from the repairs, Bayes agreed. Gill never told Bayes that any trees would be cut.
 {¶ 4} Various workers employed by Toledo Edison, First Energy, and Ohio Edison were involved in the week-long project which began the day Gill talked with Bayes. Eighteen large utility trucks drove over the property, causing ruts up to eighteen inches deep. When the repairs were complete, Bayes sought compensation from Toledo Edison for seven large trees and several smaller ones which had been cut and for damage to the grass and areas around the pond. Two Toledo Edison employees came to assess the damage: Jerome Parker, claims representative, and another employee, who photographed the property. According to Bayes, both said that they saw no reason for crews to have cut trees more than 50 feet from any of the power lines. When Toledo Edison refused to pay, Bayes sued, claiming breach of contract, trespass, unjust enrichment, promissory estoppel, and unauthorized use of easement. Bayes sought compensatory, punitive, and statutory treble damages, and injunctive and declaratory relief.
 {¶ 5} During the next year and a half, the proceedings were fraught with difficulties. Toledo Edison filed a timely answer, but failed to respond numerous times to interrogatories, request for admissions, and other discovery requests. Bayes filed a motion to compel in May 2002 and a Civ.R. 37 motion for sanctions in June 2002. The trial court denied the motion for sanctions and found the motion to compel moot. In September 2002, First Energy and Ohio Edison filed a late answer to the complaint, without requesting leave to file out of time.
 {¶ 6} The court granted a motion to intervene and added Bayes' insurance carrier, Grange Mutual Casualty Company ("Grange"), as a party in January 2003. Grange claimed subrogation rights through Bayes for reimbursement of approximately $11,055 the insurer had paid. This amount represented the maximum amount payable under Bayes' homeowner's policy. On February 18, 2003, Grange filed a voluntary dismissal of its claim, without prejudice.
 {¶ 7} On February 28, 2003, the Utilities filed a motion for leave to amend their answers to add a defense of "real party in interest," based upon Grange's having a subrogation interest in any award to Bayes. Bayes opposed the motion, providing the court with an agreement in which Grange relinquished its subrogation rights in exchange for a percentage of any award Bayes might receive. The trial court granted the motion to amend. In early March, Bayes filed various motions, including motions in limine, two motions to compel the Utilities' response to discovery, and two motions for sanctions. Bayes also sought a default judgment against Ohio Edison and First Energy based on their failure to file timely answers or motions for leave to file an untimely answer.
 {¶ 8} The court denied all of Bayes' motions, with the exception of his request to bifurcate the issue of attorney fees from the main case. The court granted the Utilities' motions in limine to exclude the following: testimony about the alleged oral modification of written easements; evidence of settlement negotiations or offers to compromise; and part of the testimony of Bayes' neighbor, Timothy Hollabaugh. The court denied the Utilities' motion to exclude the testimony of Bayes' expert, Charles Collins.
 {¶ 9} At trial, over Bayes' objections, the trial court permitted the introduction of Grange's insurance payments. The Utilities moved for a Civ.R. 50 directed verdict at the close of Bayes' case-in-chief. The court denied the motion on the Utilities' real party in interest claim and on Bayes' promissory estoppel and diminution in damages claims. The court granted a directed verdict on the unjust enrichment, fraud, and punitive damages claims. The Utilities then presented the defense to the property damages and evidence of various easements.
 {¶ 10} The jury ultimately found in favor of Bayes, awarding $12,865.50 and "their cost of action." The jury answered in interrogatories that the Utilities had "stated their obligation to reasonably restore any damage caused by their activities and that Bayes reasonably relied upon that promise."
 {¶ 11} The Utilities then filed motions for remittitur and for a new trial, once again based upon the real party in interest claim. The trial court denied these motions. On June 9, 2003, the court also entered a "nunc pro tunc" order, accepting an amended voluntary dismissal by Grange which purportedly sought to correct its original dismissal, by changing "without prejudice" to "with prejudice."
 {¶ 12} Assignments of Error
 {¶ 13} The Utilities now appeal, setting forth the following two assignments of error:
 {¶ 14} "Assignment of Error No. 1:
 {¶ 15} "The trial court erred in not granting defendant-appellant's motion for directed verdict, motion for new trial and remittitur. Plaintiff-Appellee was not `the real party in interest' as to eleven thousand fifty-five dollars and 50/100 ($11,055.55) he received from his insurer, Grange Mutual Casualty Company, because Grange asserted its subrogation interest in the action, but subsequently dismissed its claim prior to trial.
 {¶ 16} "Assignment of Error No. 2:
 {¶ 17} "The trial court erred in entering the nunc pro tuncorder dated June 10, 2003 because the trial court was patently and unambiguously divested of jurisdiction once the case had been tried to the jury and after Grange Mutual Casualty Company voluntarily dismissed its claim against defendant-appellant prior to commencement of the trial."
 {¶ 18} Michael Bayes cross-appeals, arguing the following eight assignments of error:
 {¶ 19} "Assignment of Error No. 1
 {¶ 20} "The trial court erred in denying Bayes' motion for summary judgment as to treble damages and in granting Toledo Edison's motion for summary judgment on treble damages.
 {¶ 21} "Assignment of Error No. 2
 {¶ 22} "The trial court erred in failing to impose Rule 37 sanctions against Toledo Edison.
 {¶ 23} "Assignment of Error No. 3
 {¶ 24} "The trial court erred in granting defendants leave to amend their answer to assert the real party in interest defense.
 {¶ 25} "Assignment of Error No. 4
 {¶ 26} "The trial court erred in denying plaintiff's motion for default against Ohio Edison and First Energy Corp.
 {¶ 27} "Assignment of Error No. 5
 {¶ 28} "The trial court erred in admitting evidence of insurance payments and the status of insurance.
 {¶ 29} "Assignment of Error No. 6
 {¶ 30} "The trial court erred in dismissing Count I of plaintiff's complaint.
 {¶ 31} "Assignment of Error No. 7
 {¶ 32} "The trial court erred as a matter of law in dismissing Count II for trespass.
 {¶ 33} "Assignment of Error No. 8
 {¶ 34} "The trial court erred as a matter of law in dismissing Count VI of the complaint for injunctive and declaratory relief."
 I. {¶ 35} We will address Bayes' third assignment of error and the Utilities' first assignment of error together. Bayes argues that the trial court erred in permitting the Utilities to amend their answer to add the "real party in interest" defense. The Utilities claim that the trial court failed to grant their motions for directed verdict, new trial, and remittitur since Bayes was not the "real party in interest."
 {¶ 36} Civ.R. 15 governs the amendment of pleadings and provides in pertinent part:
 {¶ 37} "(A) A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires."
 {¶ 38} The decision of whether to grant a motion for leave to amend a pleading is within the discretion of the trial court.Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.
(1991), 60 Ohio St.3d 120, 121-22. Accordingly, a reviewing court will not reverse a trial court's ruling absent an "abuse of discretion." The term "abuse of discretion" implies that the court's ruling was "unreasonable, arbitrary, or unconscionable."State v. Adams (1980), 62 Ohio St. 2d 151, 157. When the defense is tendered timely and in good faith, and there is no stated or apparent reason for denying leave, the denial of leave to amend is an abuse of discretion. Hoover v. Sumlin (1984),12 Ohio St.3d 1, 6, modified on other grounds, by Jim's SteakHouse, Inc. v. Cleveland (1998), 81 Ohio St.3d 18, 20.
 {¶ 39} However, the motion for leave should be denied if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. Id. at paragraph two of the syllabus. See, also, Farmers Prod. Credit Assn. v. Johnson (1986),24 Ohio St.3d 69, 74 (court properly denied motion for leave to amend answer where defense asserted was invalid).
 {¶ 40} A "real party in interest" has been defined as "* * * one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case." (Citations omitted). Shealy v. Campbell (1985),20 Ohio St.3d 23, 24. The purpose behind the real party in interest rule is "`* * * to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter.' Celanese Corp. ofAmerica v. John Clark Industries (5 Cir. 1954), 214 F. 2d 551,556." Shealy, supra, at 25.
 {¶ 41} To determine the identity of the real party in interest, courts must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief. R.C.2307.31, in pertinent part, provides as follows:
 {¶ 42} "(C) A liability insurer, which by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's proportionate share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship."
 {¶ 43} This section clearly allows for the intervention of the insurance company as a party to an action for contribution, for it provides that once an insurer has discharged its obligations to its insured, it becomes subrogated to the rights of its insured.
 {¶ 44} Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. SeeAmerican Motorists Ins. Co. v. Olin Hunt Specialty Products,Inc. (Sept. 20, 2001), 10th Dist. No. 00AP-1313, citingAmerican Ins. Group v. McCowin (1966), 7 Ohio App.2d 62, 65. If an insurer has paid only part of a claim, both the insurer and the insured have substantive rights against the tortfeasor that qualify them as real parties in interest. Cleveland Paint Color Co. v. Bauer Mfg. Co. (1951), 155 Ohio St. 17, 24-25, citing United States v. Aetna Cas. Sur. Co. (1949),338 U.S. 366, 380-381. A subrogated insurer which has fully paid a claim becomes the sole party in interest and the insured loses his or her right of action against the wrongdoer. Shealy, supra, at 25. See, generally, 6 Wright Miller, Federal Practice 
Procedure, Subrogation (1971) 656, Section 1546; 16 Couch on Insurance 2d (1983) 104, Section 61.26; Banford v. State FarmIns. Co. (June 22, 2001), 2d Dist. No. 18464 and Sherwood v.Davis (Dec. 15, 2000), 2d Dist. No. 2000-CA-34 (holding that plaintiff need not reveal the involvement of his insurance carrier that waived subrogation rights, and that the plaintiff may maintain the suit solely in his own name as the real party in interest).
 {¶ 45} Furthermore, conventional subrogation rights are based upon agreements between parties and are controlled by contract principles. Blue Cross Blue Shield Mut. Of Ohio v. Hrenko
(1995), 72 Ohio St.3d 120, 121. Parties to a subrogation agreement may modify, extinguish or even completely destroy the contract rights granted by its terms. Nationwide Mut. Fire Ins.Co. v. Sonitrol, Inc., 109 Ohio App.3d 474, 482.
 {¶ 46} In this case, the Utilities claim that because Bayes received Grange's payment, his rights were entirely subrogated to Grange. Although Bayes did receive payment up to his policy limits, his damages claimed exceeded the amount received. Since both Bayes and Grange could directly benefit from any lawsuit against the tortfeasor, they were both initially real parties in interest. It is undisputed, however, that Bayes and Grange entered into an agreement whereby Grange relinquished its subrogation rights, in exchange for a percentage of any award that Bayes might obtain. Consequently, when Grange voluntarily waived its subrogation right to seek direct reimbursement from the Utilities and then dismissed its claims, Bayes became the only real party in interest. Since the trial court was informed of this agreement before granting the Utilities' motion for leave to amend its answer, it should have determined that the real party in interest defense was no longer valid. Therefore, the trial court abused its discretion in permitting the Utilities to amend their answer to include an invalid defense.
 {¶ 47} The standard for granting a motion for a new trial pursuant to Civ.R. 50(B) is the same as that for granting a motion for a directed verdict pursuant to Civ.R. 50(A). Texlerv. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679. Civ.R. 50(A)(4) provides:
 {¶ 48} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 49} When considering a motion for remittitur, the trial court must remember that "the assessment of damages is a matter within the province of the jury." Carter v. Simpson (1984),16 Ohio App.3d 420, 423. The denial of a motion for remittitur is not erroneous unless the award is so excessive as to appear to be the result of passion or prejudice on the part of the jury, or unless the amount awarded is excessive and against the manifest weight of the evidence. Litchfield v. Morris (1985),25 Ohio App.3d 42, 44; Cox v. Oliver Machinery Co. (1987),41 Ohio App.3d 28, 35. To reverse a jury's damage award, the court must find the award to be "so disproportionate as to shock reasonable sensibilities." Jeanne v. Hawkes Hosp. of Mt. Carmel (1991),74 Ohio App.3d 246, 257.
 {¶ 50} The decision to grant or deny a new trial or remittitur rests within the trial court's sound discretion and will not be reversed on appeal absent an abuse of that discretion. Malone v. Courtyard by Marriott L.P. (1995),74 Ohio St.3d 440, 448 (new trial); Betz v. Timken Mercy Med. Ctr.
(1994), 96 Ohio App.3d 211, 218 (remittitur). The term "abuse of discretion" implies more than an error in law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. The denial of a directed verdict presents a question of law and is reviewed on appeal under a de nova standard. Schafer v. RMS Realty (2000), 138 Ohio App.3d 244,257.
 {¶ 51} Since the Utilities' motions for directed verdict, new trial, and remittitur were based upon an invalid "real party in interest" defense, we cannot say that the trial court abused its discretion or that it erred as a matter of law in denying these motions.[1] Accordingly, Bayes' third assignment of error is well-taken; the Utilities' first assignment of error is not well-taken.
 II. {¶ 52} In Bayes' fifth assignment of error, he argues that the trial court erred in permitting evidence of insurance payments at trial. We agree.
 {¶ 53} Evidence of collateral benefits, such as insurance payments, is not admissible in a tort action to "diminish the damages for which a tortfeasor must pay for his negligent act."Pryor v. Webber (1970), 23 Ohio St.2d 104, paragraph two of the syllabus. Their receipt should not be admitted in evidence and should not be otherwise disclosed to the jury. Suchy v. Moore
(1972), 29 Ohio St.2d 99, 102. Where such evidence is introduced and was prejudicial, the error can be corrected only by granting of a new trial on all issues. Pryor, supra, at 116. See, also,Lugli v. Herschler (Sept. 18, 1998), 6th Dist. No. H-97-022;Amison v. Sosa (Dec. 18, 1981), 6th Dist. No. E-81-20.
 {¶ 54} In this case, the Utilities argue that the introduction of Grange's payments to Bayes was simply to establish the Utilities' defense of "real party in interest" or to show inconsistency in Bayes' evidence of the cost of repairing the damages. Since we have already determined that the "real party in interest" defense was invalid, however, the introduction of insurance payments would be improper for that purpose. Moreover, when questioning Bayes about the insurance payment, the Utilities never sought to introduce evidence of Grange's subrogation rights. The Utilities introduced only evidence of the amount of the insurance payment. The later agreement between Bayes and Grange was introduced by Bayes himself only to show that he would have to reimburse his insurance company from any damages award.
 {¶ 55} In addition, since Bayes submitted three estimates to his insurance company for damages, each for approximately $27,000, the amount paid by insurance was not relevant to the total cost of repairs. The Utilities could have submitted evidence of the estimates, without specifically revealing any evidence of the insurance payment. As a result, Bayes was prejudiced by the court's admission of evidence of the insurance payment.
 {¶ 56} Accordingly, Bayes' fifth assignment of error is well-taken.
 III. {¶ 57} We will address Bayes' first, seventh and eighth assignments of error together.
 {¶ 58} In his first assignment of error, Bayes asserts that the trial court erred in denying his summary judgment motion and granting the Utilities' motion for the following claims: statutory treble damages, common law trespass, and exceeding the scope and authority of any Utilities' easement rights.
 {¶ 59} A "common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *." Apel v. Katz (1998),83 Ohio St.3d 11, 19. Actionable trespass requires an interference with the exclusive possessory interest of the property owner.Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,717 (citation omitted).
 {¶ 60} In this case, although the record shows that the Utilities did cause damage, it also shows that Bayes directly granted a license to the workers to use his driveway and traverse his property to access the damaged poles. Although the Utilities may have breached the agreement to fix any damages, Bayes cannot show that the Utilities did not have authority to enter his property. Consequently, the trial court properly dismissed Count II insofar as it represented a common law trespass claim.
 {¶ 61} Certain "trespass" statutes, however, provide for damage to property. R.C. 901.51 states:
 {¶ 62} "No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.
 {¶ 63} "In addition to the penalty provided in section 901.99
of the Revised Code, whoever violates this section is liable in treble damages for the injury caused."
 {¶ 64} A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. Collins v. Messer, 12th Dist. No.CA2003-06-149, 2004-Ohio-3007, at ¶ 11. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. Id.; R.C.2901.22(C); Wooten v. Knisley, 79 Ohio St.3d 282, (the term "recklessly" as it is used in R.C. 901.51 has the same meaning in a civil claim for treble damages and is defined in R.C.2901.22[C]).
 {¶ 65} The trial court in this case determined that, since Bayes had given the Utilities permission to enter his property, he knew that damages would result and as he acquiesced to the Utilities' actions, was foreclosed from seeking treble damages under R.C. 901.51. We disagree.
 {¶ 66} The record reveals that in giving permission to enter his property, Bayes foresaw damages to the driveway and grass areas. Nothing in the record demonstrates that Bayes had any reason to know that the workers would cut trees or damage parts of his property not close to the area of pole repair. R.C. 901.51
addresses only the privilege to perform certain actions to trees and other vegetation; it does not provide that permission to enter property implies or grants permission to create any and all damage to that property. Testimony was also presented that trees were cut unnecessarily, raising a question of recklessness. The trial court, therefore, erred in granting summary judgment to the Utilities because Bayes gave them permission to enter the property with the knowledge that some damage might occur.
 {¶ 67} The Utilities also asserted, however, that certain easements authorized their entry and gave them the right to cut trees and vegetation at their discretion. In Count VI, Bayes claimed that the Utilities exceeded their authority under and sought a determination of the scope of those easements. The trial court dismissed Count VI on the basis of mootness, without any analysis.
 {¶ 68} An easement is an interest in the land of another, created by prescription or express or implied grant, that entitles the owner of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate. See Alban v. R.K. Co. (1968),15 Ohio St.2d 229, 231; Yeager v. Tuning (1908), 79 Ohio St. 121, 124. Consequently, a cause of action in trespass will not lie when the purported trespasser holds an easement to the property on which he or she is purportedly trespassing. See Blashinsky v. Topazio
(Apr. 17, 1987), 11th Dist. No. 11-113 (a cause of action in trespass cannot be maintained where an easement permits the entrance upon the property).
 {¶ 69} Nevertheless, when an easement is created by an express grant, the extent and limitations of the easement depend upon the language of the grant. Alban, supra, at 232; ColumbiaGas Transm. Corp. v. Bennett (1990), 71 Ohio App.3d 307, 318. Where the dimensions of the easement are not expressed in the instrument granting the easement, the court determines the width, length, and depth from the language of the grant, the circumstances surrounding the transaction, and that which is reasonably necessary and convenient to serve the purpose for which the easement was granted. H S Co., Ltd. V. Aurora, 11th Dist. No. 2003-P-0104, at ¶ 16; Phoenix Concrete, Inc. v.Reserve-Creekway, Inc. (1995), 100 Ohio App.3d 397, 405;Roebuck v. Columbia Gas Transm. Corp. (1977),57 Ohio App.2d 217,224. See, also, Ohio Power Co. v. Bauer (1989),60 Ohio App.3d 57, 59 (although the grant of access for maintenance and control of power lines and towers is indefinite, global, and allows access over the entire dominant property, the court must determine rights of competing interests). Thus, when the specific dimensions or terms of an easement are not expressed in the grant itself, determining the dimensions or reasonableness of use becomes a question of fact. Crane Hallow Inc. v. MarathonAshland Pipe Line (2000), 138 Ohio App.3d 57, 67; Murray v.Lyon (1994), 95 Ohio App.3d 215, 220.
 {¶ 70} The record contains descriptions of two relevant easements. The first, conveyed in 1949, grants to the "Toledo Edison Company, its successors and assigns, during corporate life, the right and easement to construct, relocate, operate and maintain, at this time or at such time or times in the future as the company desires, a line or lines for the transmission and distribution of electric energy thereover, for any and all purposes for which electric energy is now or may be hereafter used, with all necessary poles, wires, cables, guy wires, stubs, anchors, fixtures and appliances in, through, over, under and upon my/our lands, situate in the Township of Center, County of Williams, State of Ohio * * *." The route of this easement is described as running across the southern boundary of Bayes' property, "approximately one foot north of the north right-of-way of the New York Central Railroad." Toledo Edison was also granted "the rights of ingress and egress to, over and from said premises and the right to remove and keep free any obstructions from and along said line or lines that, in the judgment of The Toledo Edison Company, will interfere with the construction of safe operation of said line or lines."
 {¶ 71} The second easement, granted in 1966, is a right of way on a strip of land "on each side of a centerline across" the then described property, and also includes "the rights of ingress and egress to, over and from said property" and "the right to trim or remove underbrush and trees and to remove and keep free any obstructions from and along said line or lines that, in the judgment of [Toledo Edison] will interfere with the construction or safe operation thereof. * * *" This easement is located east of and is not directly within or near the boundaries of Bayes' property. Thus, its effect is only that Toledo Edison had a right to enter to reach the easement area beyond Bayes' property.
 {¶ 72} Neither easement specifies a width or a specific place for entering the property. This lack of description constitutes a "global easement" which requires the Utilities to use reasonableness in exercising any easement rights. Reasonableness of use is a question for the trier of fact and is also relevant to determine whether the cutting of the trees was reckless.
 {¶ 73} Even if it is presumed that the Utilities acted within their rights, when property is damaged during the exercise of easement rights, a property owner may still be entitled to compensation where he has not burdened or interfered with the grantee's use of the easement. See Jones v. Dayton Power LightCo. (Dec. 14, 1994), 2d Dist. No. 94-CA-49 (landowner entitled to compensation for trees which "posed a threat to power lines" removed by electric company crew).
 {¶ 74} Therefore, the trial court erred in granting summary judgment as to Count IV and in not determining the scope of the easements and their relevance to Bayes' claims for damages. Whether the Utilities' actions were reasonable or reckless is a question for the jury. As such, the trial court erred in granting summary judgment and denying Bayes' claim for treble damages.
 {¶ 75} Accordingly, Bayes' first and eighth assignments of error are well-taken; the seventh assignment of error is not well-taken.
 IV. {¶ 76} Bayes contends, in the sixth assignment of error, that that trial court erred in dismissing Count I of his complaint, breach of an oral license agreement.
 {¶ 77} Count I asserts that Bayes granted a license to the Utilities to enter his property, but only with the agreement that the Utilities promised to repair any damages. The essence of Count I is that the Utilities breached this oral agreement. The trial court, however, mistakenly interpreted Bayes' claim to mean that the Utilities needed a license before entering and that the license was not given. Based upon this misinterpretation, the court improperly dismissed Count I as being moot.
 {¶ 78} Nonetheless, Count V also alleged that "entry upon the property was subject to an oral agreement or license * * * subject to the understanding that Defendants would adequately repair and/or compensate as described above." We conclude that the claim for breach of the oral license claim was preserved, and was, in fact, the basis for the jury's award. Therefore, any error in dismissing Count I was harmless.
 {¶ 79} Accordingly, Bayes' sixth assignment of error is not well-taken.
 V. {¶ 80} In the fourth assignment of error, Bayes claims that the trial court erred in denying his motion for default judgment against Ohio Edison and First Energy. Bayes asserted to the trial court that Ohio Edison and First Energy's answers were served on him six months late and were not filed with the court until September 2002, two months after service upon him.
 {¶ 81} Default judgment may be awarded when a defendant fails to make an appearance by filing an answer or otherwise defending an action. Civ.R. 55(A). Civ.R. 6(B)(2) allows for an extension of time to file a late pleading within the trial court's discretion "upon motion made after the expiration of the specified period * * * where the failure to act was the result of excusable neglect." A court may permit the filing of an untimely answer where there is sufficient evidence of excusable neglect on the record. State ex rel. Lindenschmidt v. Butler Cty. Bd. ofCommrs. (1995), 72 Ohio St.3d 464, 465, Evans v. Chapman
(1986), 28 Ohio St.3d 132, 135.
 {¶ 82} A trial court's Civ.R. 6(B)(2) determination is left to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion.Evans, supra; Miller v. Lint (1980), 62 Ohio St.2d 209,213-214. Nevertheless, the trial court's discretion is not unlimited. Miller, supra, at 214. The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful of the admonition that cases should be decided on their merits, where possible, rather than on procedural grounds.Marion Prod. Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265,271; Griffey v. Rajan (1987), 33 Ohio St.3d 75, 79. In cases where no motion for default judgment is pending, "the trial court's discretion to allow a delayed responsive pleading" is "enlarged." Marion Prod. Credit Assn., supra, at 272; see also,Evans, supra, at 135. But see, Miller v. Lint, supra, at 214 (trial court abused its discretion in allowing the filing of an untimely answer when no Civ.R. 6(B) motion setting forth excusable neglect had been filed).
 {¶ 83} In this case, Ohio Edison and First Energy failed to file Civ.R. 6(B) motions for leave to file late answers. Instead, the answers were simply filed well beyond the permitted time period. By then, Bayes had not yet filed his motion for default against the two defendants. Thus, the trial court was within its discretion to consider the surrounding facts and circumstances. The answer filed by Toledo Edison includes defenses for Ohio Edison and First Energy, suggesting that it was intended to be filed as an answer for all three companies, who were ultimately all represented by the same defense counsel. Through probable oversight, the opening paragraph of Toledo Edison's answer merely failed to include the other two companies.
 {¶ 84} Moreover, Ohio Edison and First Energy's answers were virtually the same as that put forth by Toledo Edison. Bayes made no showing that the untimely answers prejudiced his trial preparation, since the same employees and witnesses were involved. Therefore, after considering all the facts and circumstances on the record before the trial court, we cannot say that the court abused its discretion in permitting Ohio Edison and First Energy to file late answers.
 {¶ 85} Accordingly, Bayes' fourth assignment of error is not well-taken.
 VI. {¶ 86} Bayes, in his second assignment of error, argues that the trial court erred in failing to impose Civ.R. 37 sanctions against Edison for failing to respond to discovery requests.
 {¶ 87} Generally speaking, Civ.R. 37 provides a mechanism by which discovery rules can be enforced and specifically authorizes a trial court to make "just" orders in response to discovery violations, including the imposition of sanctions for a failure to comply with discovery orders. In particular, Civ.R. 37(A) authorizes and governs motions to compel discovery; Civ.R. 37(B) authorizes sanctions against a party who fails to obey an order to provide or permit discovery; Civ.R. 37(C) governs the imposition of fees against parties who fail to admit matters without good reason; Civ.R. 37(D) authorizes immediate sanctions against a party who fails to appear at a properly noticed deposition or fails to respond to other written discovery requests; and Civ.R. 37(E) mandates that parties make reasonable efforts to resolve discovery disputes before seeking judicial intervention.
 {¶ 88} When determining whether a dismissal is an appropriate discovery sanction, courts should remember "the tenet that `disposition of cases on their merits is favored in the law.'"Quonset Hut, Inc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46,48, quoting Jones v. Hartranft (1997), 78 Ohio St.3d 368, 371. Thus, courts should exercise their discretion in granting dismissals "on purely procedural grounds" in a "careful" and "cautious" manner. Id. Nonetheless, a reviewing court "will not hesitate to affirm the dismissal of an action when `the conduct of a party is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice for a failure to * * * obey a court order." QuonsetHut, Inc., supra, at 48, quoting Tokles Son, Inc. v.Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 632. (internal quotation omitted).
 {¶ 89} In Jones v. Hartranft, the court described the factors a court should consider when determining if dismissal is an appropriate sanction for a discovery violation: "Proper factors for consideration in a Civ.R. 41(B)(1) dismissal with prejudice include the drawn-out history of the litigation, including a plaintiff's failure to respond to interrogatories until threatened with dismissal, and other evidence that a plaintiff is deliberately proceeding in dilatory fashion or has done so in a previously filed, and voluntarily dismissed, action. See Link v. Wabash RR. Co. (1962), 370 U.S. 626, 633-635,82 S. Ct. 1386, 1390-1391, 8 L. Ed. 2d 734, 740-741; Indus. RiskInsurers v. Lorenz Equip. Co. (1994), 69 Ohio St.3d 576, syllabus." Jones, supra, at 372. See, also, Russo v. GoodyearTire Rubber Co. (1987), 36 Ohio App.3d 175, 178 (stating that in evaluating the appropriateness of a particular sanction, a court should "consider the posture of the case and what efforts, if any, preceded the noncompliance and then balance the severity of the violation against the degree of possible sanctions"). Our reading of the court's decision reveals that it considered the appropriate factors in its analysis.
 {¶ 90} An appellate court will not reverse the trial court's determination on discovery sanctions unless there has been an abuse of discretion. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, syllabus. This means that the trial court's decision is unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 91} In this case, the record reveals that Bayes did, in fact, file three motions for sanctions and several motions to compel the other parties to respond to requests for discovery and to attend depositions. The record also shows that the Utilities were extremely dilatory in responding to such requests. They were uncooperative in providing information and access to employees or subcontractors involved at Bayes' property. At one point, the court admonished the Utilities to respond, essentially granting a motion to compel. The trial court, nonetheless, declined each time to impose sanctions or award attorney fees. While we do not condone Edison's actions and may ourselves have awarded sanctions for such unprofessional and delaying tactics, we may not simply substitute our judgment for that of the trial court. The trial judge was in the best position to view the attorneys face-to-face throughout the progress of the case to determine whether sanctions were warranted. Therefore, we cannot say that the trial court abused its discretion in denying Bayes' request for sanctions.
 {¶ 92} Accordingly, Bayes' second assignment of error is not well-taken.
 VII. {¶ 93} The Utilities argue in their second assignment of error, that the trial court erred to their prejudice in entering a nunc pro tunc order to change Grange's voluntary dismissal from "without prejudice" to "with prejudice."
 {¶ 94} The sole function of a nunc pro tunc order is to correct clerical mistakes in judgments, orders, or other parts of the record. Civ.R. 60(A); Helle v. Public Utilities Commission
(1928), 118 Ohio St. 434, paragraph three of the syllabus. The term "clerical mistake" refers to mechanical errors which are readily apparent on the record. See Caprita v. Caprita (1945),145 Ohio St. 5, 7; Dentsply Internatl., Inc. v. Kostas (1985),26 Ohio App.3d 116, 118. Thus, the function of nunc pro tunc is merely to have the record reflect what the court actually decided, not what the court might or should have decided or what the court intended to decide. State ex rel. Fogle v. Steiner
(1995), 74 Ohio St.3d 158, 164.
 {¶ 95} In this case, the nunc pro tunc entry attempted to correct an error on a notice filed by a party, rather than a clerical mistake by the court. Consequently, the court improperly issued a void nunc pro tunc judgment. Nevertheless, since the court's action did not take place until well after trial, the order had no impact on the "real party in interest" issue or other issues at trial. Therefore, any error was harmless since we can find no prejudice to the Utilities.
 {¶ 96} Accordingly, the Utilities' second assignment of error is not well-taken.
 {¶ 97} The judgment of the Lucas County Court of Common Pleas is affirmed as to the Utilities' two assignments of error, and Bayes' second, fourth, sixth and seventh assignments of error, and reversed as to Bayes' first, third, fifth, and eighth assignments of error. This case is remanded to the trial court for proceedings consistent with this decision. Court costs of this appeal are assessed to appellants, Toledo Edison, First Energy, and Ohio Edison.
JUDGMENT AFFIRMED.
[1] We note that on appeal, we do not have a complete transcript of Bayes' case-in-chief. Thus, we would still have to presume the regularity of the trial court's denial of the motions.