[Cite as *Delaware Golf Club, L.L.C. v. Dornoch Estates Homeowners Assn., Inc.*, 2020-Ohio-880.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DELAWARE GOLF CLUB, LLC | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 19 CAE 04 0027 |
| | : | |
| DORNOCH ESTATES | : | |
| HOMEOWNERS ASSOCIATION, INC., | : | |
| ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court of Common Pleas, Case No. 16 CVH 08 0532

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      March 5, 2020

APPEARANCES:

For Plaintiff-Appellant:

KARL H. SCHNEIDER
TODD A. LONG
21 E. State St., Suite 1700
Columbus, OH 43215

For Defendants-Appellees:

D. WESLEY NEWHOUSE
MICHEL JENDRETZKY
3366 Riverside Dr., Suite 103
Columbus, OH 43221

GREGORY H. MELIC
1160 Dublin Rd., Suite 400
Columbus, OH 43215

*Delaney, J.*

{¶1} Plaintiff-Appellant Delaware Golf Club, LLC appeals the March 5, 2019 judgment entry of the Delaware County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

**Agreement and Easement**

{¶2} Defendant-Appellee Dornoch Estates Homeowners Association, Inc. is a not-for-profit corporation managing Dornoch Estates, a planned unit development in Delaware County. Dornoch Estates consists of approximately 393 single-family homes. Plaintiff-Appellant Delaware Golf Club, LLC, operates an 18-hole golf course, located adjacent and contiguous to Dornoch Estates.

{¶3} In September 1997, Dornoch Estates obtained a "Permit to Install No. 01-7240" from the Ohio Environmental Protection Agency for the installation and operation of a wastewater treatment plant to serve the subdivision and the golf course. The permit applied to a wastewater disposal system designed to serve an average daily hydraulic flow of no more than 120,000 gallons. The engineering report submitted with the permit application stated that an irrigation pumping station would pump the reclaimed water to irrigate turf grasses on the golf course. The report stated that 144 total acres were available for irrigation and 76 acres were required for irrigation.

{¶4} The operator of the wastewater treatment plant was Defendant-Appellee Scott Jamison dba Jamison Environmental.

{¶5} In April 2007, Dornoch Estates entered into an "Agreement and Easement" with Dornoch Development Ltd., the Golf Club's predecessor-in-interest, regarding the

wastewater treatment plant. The dominant estate was Dornoch Estates and the servient estate was the golf course property. The Agreement and Easement state in pertinent part:

A. [Golf Club] (Grantor) is the owner of real estate located at 3329 Columbus Pike, Delaware, Ohio, situated on the acreage described in "Exhibit A", attached hereto "the Real Estate", which property currently consists of the entire eighteen (18) hole golf course and real property and components related to its use as a golf course, and which property surrounds the sewage treatment plant owned and operated by the Association (Grantee) on the 1.016 acre tract described in "Exhibit B" attached;

B. The clean, treated wastewater from the Association's (Grantee's) facility is a partial resource for irrigation of the Real Estate; and

C. The Real Estate is an essential resource to the Association's (Grantee's) facility, providing a safe and sanitary means for disposal of the clean water outflow from the Association's (Grantee's) facility; and

D. The Association's (Grantee's) facility is designed to prevent intrusion of the facility's outflow into the nearby Olentangy River, and its design and operations have been approved by the Ohio Environmental Protection Agency; and

**Agreement and Grant**

NOW, THEREFORE, in consideration of their mutual promises, the parties agree as follows:

1. Development (Grantor) hereby grants to Association (Grantee) an easement upon the Real Estate described in Exhibit "A" for the purpose of disposing clean, treated, outflow from Association's (Grantee's) treatment facility * * * which clean water shall be piped into the Real Estate lake, and, when needed, to the adjacent retention basin, * * *, to be distributed through the Real Estate irrigation system.

* * *

3. This easement includes and Development (Grantor) agrees to accept the Association's (Grantee's) entire outflow of clean, treated water * * * as permitted by the Permit to Install No. 01-7240 originally issued effective September 29, 1997. * * *

4. Development (Grantor) shall have the right to relocate on the Real Estate at Development's (Grantor's) cost with the consent of the Huntington National Bank, if it still possesses mortgages on the Real Estate, the pipelines originally installed for Association (Grantee) as needed to accommodate Development's (Grantor's) use of its property. * * * Nor shall such a relocation have a detrimental effect on spreading the clean water outflow to all portions of the Real Estate.

* * *

8. Development (Grantor) covenants that it will detain, distribute, and apply the Association's (Grantee's) entire outflow upon the Real Estate as presently configured in compliance with the requirements of the Ohio

Environmental Protection Agency and the Permit to Install associated with the facilities accommodated hereby.

**After-Easement Developments**

{¶6} In November 2012, Dornoch Estates submitted a "Land Application Management Plan" to the OEPA for approval. The LAMP provided that "[t]he portion of the course that is irrigated consists of approximately 144 acres, as described in Section 3.2 of this Plan." The LAMP was approved by OEPA on December 5, 2013, "subject to the condition of compliance with all applicable laws, rules, regulations and all the conditions below and in Part I and/or Part II of this permit." Dornoch Estates did not notify the Golf Club that the 2012 LAMP was submitted or approved on December 5, 2013.

{¶7} The Golf Club became aware that violations had occurred at the wastewater treatment plant. The OEPA issued notices of violations for noncompliance to Dornoch Estates in 2014 and 2015. The violations showed that improperly treated wastewater had been discharged from the treatment plant and into the Golf Club's lakes and retention basin, then onto the golf course through the irrigation system. Dornoch Estates did not notify the Golf Club of the violations.

{¶8} In addition to the Agreement and Easement, Dornoch Estates allowed the Golf Club to transport freshwater from a golf course surface pond (storm water pond) to the pond that receives the treated wastewater (irrigation pond) through pipes that were designed to transport wastewater. The parties operated under the arrangement since 2007, until Dornoch Estates began denying the Golf Club access to the pumps in 2016. In 2017, the Golf Club purchased and installed a new pump. Dornoch Estates then

permitted the Golf Club to resume transporting fresh water through the wastewater treatment facility pipes.

{¶9}   When the Golf Club became aware of the LAMP in early 2016, it requested that Dornoch Estates submit an amendment to the LAMP reflecting that the portion of the property that was irrigated consisted of only 76 acres, not 144 acres as represented in the LAMP. Dornoch Estates refused.

{¶10} On January 20, 2016, the Golf Club presented a concept plan to the City of Delaware for the development of a portion of the golf course for mixed residential/commercial use. The plan proposed a phase of development that would reduce the irrigation area from the wastewater treatment plant to 76 acres.

{¶11} In July 2016, the Golf Club became aware that a retaining wall on the property of Dornoch Estates and adjacent to a golf cart path had collapsed. Dornoch Estates had constructed the retaining wall to accommodate the installation of a road in the subdivision. Dornoch Estates would not repair or replace the retaining wall.

## Civil Action

{¶12} On August 30, 2016, the Golf Club filed a complaint with request for permanent injunction against Dornoch Estates and Jamison (hereinafter "Dornoch Estates") in the Delaware County Court of Common Pleas. The Golf Club requested six claims for relief: (1) permanent injunction to prevent Dornoch Estates from committing additional violations and discharging untreated wastewater on the golf course property; (2) termination and/or modification of the "Agreement and Easement" and LAMP; (3) fraudulent concealment and fraud by omission; (4) negligence; (5) trespass; and (6) declaratory judgment and request for mandamus based on the collapsed retaining wall.

The majority of the Golf Club's claims, and pertinent to this appeal, related to the required amount of acreage for irrigation of the treated wastewater. The Golf Club argued only 76 acres were required for irrigation.

{¶13} Dornoch Estates filed its answer and counterclaim on September 13, 2016. In its counterclaim, Dornoch Estates argued the Golf Club engaged in abuse of process by filing its lawsuit to pressure the parties to terminate and/or amend the Agreement and Easement to reduce the acreage required to 76 acres so that the Golf Club could proceed with its development plans.

**Amended Complaints**

{¶14} On September 14, 2016, the Golf Club filed its first amended complaint with request for permanent injunction. The Golf Club added a seventh claim, requesting a permanent injunction preventing Dornoch Estates from restricting access to water from the storm water pond. The Golf Club also filed a motion for temporary restraining order and preliminary injunction, which the trial court denied on September 20, 2016.

{¶15} The Golf Club filed a motion for leave to file a second amended complaint on October 4, 2016. Based on the trial court's denial of its motion for temporary restraining order and preliminary injunction, the Golf Club argued it suffered monetary damages for the actions of Jamison and Dornoch Estates in limiting its access to the water in the storm water pond. It raised four new claims: (7) breach of contract and tortious interference with contractual relations; (8) breach of implied contract and tortious interference with contractual relations; (9) breach of implied easement and tortious interference with implied easement; and (10) request for permanent injunction to enjoin Dornoch Estates

from restricting access to the water in the storm water pond. The trial court granted the motion and the second amended complaint was filed on October 24, 2016.

{¶16} On January 3, 2017, Dornoch Estates filed a motion for partial judgment on the pleadings pursuant to Civ.R. 12(C). It argued the trial court should dismiss all of the Golf Club's claims in the second amended complaint, except for the fifth and sixth causes of action, which sought damages for Dornoch Estates' alleged trespass by discharging untreated wastewater on to the golf course and declaratory judgment and injunction regarding the collapsed retaining wall. Dornoch Estates next filed a motion to dismiss the Golf Club's second amended complaint, except the sixth cause of action, for lack of subject matter jurisdiction. Dornoch Estates argued the trial court lacked subject matter jurisdiction over the majority of the Golf Club's claims because the exclusive remedy for addressing alleged violations of Ohio's water pollution laws was through the administrative procedures set forth in R.C. Chapter 3745.

{¶17} On May 1, 2017, the Golf Club filed a motion for leave to file a third amended complaint pursuant to Civ.R. 15(A). The main purpose of the third amended complaint was to assert two new claims. The eleventh claim related to an alleged sanitary sewer overflow that occurred on March 20, 2017 and caused damage to the golf course property. The twelfth claim set forth a specific request for declaratory judgment and reformation of the Agreement and Easement related to the amount of acreage required on the golf course for irrigation purposes. Dornoch Estates filed a memorandum contra and the Golf Club replied.

{¶18} On August 8, 2017, the trial court issued two judgment entries, the first granting in part and denying in part Dornoch Estates' motion for partial judgment on the

pleadings and motion to dismiss for lack of subject matter jurisdiction and the second denying the Golf Club's motion for leave to file a third amended complaint.

{¶19} The trial court first dismissed the Golf Club's first claim for a permanent injunction enjoining Dornoch Estates from committing additional violations and discharging any untreated wastewater onto the golf course and the Golf Club's second claim to the extent that it sought a modification of the LAMP. The trial court next granted the motion for partial judgment on the pleadings on the Golf Club's second claim that the Agreement and Easement should be modified to include additional terms. The trial court found it was without authority to modify the Agreement and Easement. The trial court further found Dornoch Estates was entitled to judgment on the pleadings as to the third, fourth, seventh, eighth, and ninth claims. The Golf Club's fifth (trespass), sixth (declaratory judgment and request for mandamus based on the collapsed retaining wall), and tenth (request for permanent injunction enjoining Dornoch Estates from restricting access to water in the storm water pond) claims in the second amended complaint remained pending before the trial court.

{¶20} The trial court denied the Golf Club's motion for leave to file a third amended complaint. The trial court denied the Golf Club's motion because it did not establish that its proposed additional claims were supported by law. The Golf Club's claims in the proposed third amended complaint were similar to those raised in the second amended complaint and dismissed by the trial court.

{¶21} The Golf Club filed a motion for reconsideration of the trial court's August 8, 2017 judgment entry denying its motion for leave to file a third amended complaint. The motion specifically requested the trial court reconsider its denial of the request for

declaratory judgment and reformation of the Agreement and Easement. Alternatively, the Golf Club requested leave to add a claim for declaratory judgment that it had the right to use its property in any manner that was not prohibited by the easement and did not unreasonably interfere in the use of the easement. Upon examination of the Golf Club's more thoroughly argued motion, the trial court permitted the Golf Club to amend its complaint. As to its argument that it should be permitted to add a claim for declaratory judgment that it had the right to use its property in any manner, the trial court stated:

> Having determined that a court cannot redefine the dimensions of the agreement and easement, it is unclear to the Court what clarity will come from a declaration that Plaintiff can use its property in any manner not prohibited by law and in ways that do not unreasonably interfere with the easement. If Plaintiff believes, however, that such a declaration is necessary, the Court will allow Plaintiff to assert the claim in its amended complaint.

(February 26, 2018 Judgment Entry). The trial court also allowed the Golf Course to amend the complaint to assert a claim for breach of the Agreement and Easement for the sanitary sewer overflow. The third amended complaint was filed on March 7, 2018.

{¶22} On May 31, 2018, the parties filed an agreed judgment entry that dismissed the Golf Club's sanitary sewer overflow claim.

## Summary Judgment

{¶23} The Golf Club filed a motion for partial summary judgment on June 6, 2018. Dornoch Estates filed a motion for summary judgment on July 16, 2018.

{¶24} On November 6, 2018, the Golf Club filed a motion for the trial court to dismiss without prejudice pursuant to Civ.R. 41(A)(2) its request for declaratory judgment regarding the collapsed retaining wall. The Golf Club argued the claim was moot because the local government determined it would replace the retaining wall. Dornoch Estates opposed the motion.

{¶25} On December 7, 2018, the trial court issued its judgment entry that ruled upon the Golf Club's motion for partial summary judgment and motion to dismiss one claim and Dornoch Estates' motion for summary judgment. The Golf Club's remaining claims before the trial court were: (1) breaches of the Agreement and Easement as to alleged violations of the OEPA requirements; (2) trespass; (3) declaratory judgment and request for mandatory injunction related to the collapsed retaining wall; (4) breach of contract related to the Golf Club's access to the storm water pond; (5) breach of implied contract related to the Golf Club's access to the storm water pond; (6) breach of implied easement related to the Golf Club's access to the storm water pond; (7) permanent injunction to enjoin Dornoch Estates from restricting access to the storm water pond; and (8) declaratory judgment regarding the Agreement and Easement and the Golf Club's right to use the property in any manner that was not prohibited by the easement and did not unreasonably interfere in the use of the easement. The counterclaim for abuse of process brought by Dornoch Estates also remained.

{¶26} The Golf Club argued it was entitled to judgment as a matter of law on its claims for breach of the Agreement and Easement and trespass and Dornoch Estates' claim for abuse of process. Dornoch Estates moved for summary judgment on all of the

Golf Club's remaining claims, except for the Golf Club's request for declaratory judgment regarding the Agreement and Easement and its rights to use the property.

{¶27} The trial court granted summary judgment in favor of Dornoch Estates on the Golf Club's claims for (1) declaratory judgment as to the collapsed retaining wall, also denying the Golf Club's motion to dismiss that claim; (2) breach of the Agreement and Easement as they related to violations of the OEPA requirements; and (3) permanent injunction to enjoin Dornoch Estates from restricting access to the storm water pond. The trial court found in favor of the Golf Club on its claim for trespass, awarding the Golf Club nominal damages in the amount of $150.00. Finally, the trial court determined there were genuine issues of material fact on Dornoch Estates' claim for abuse of process and the Golf Club's claims for breach of contract, breach of implied contract, and breach of implied easement related to the storm water pond access. The matter was set for a bench trial on the remaining claims.

**Bench Trial**

{¶28} In January 2019, the parties presented the remaining claims to the trial court at a three-day bench trial. 11 witnesses and numerous exhibits were presented. The following matters were before the trial court: (1) declaratory judgment regarding the Agreement and Easement and the Golf Club's right to use the property in any manner that was not prohibited by the easement and did not unreasonably interfere in the use of the easement; (2) breach of contract related to the Golf Club's access to the storm water pond; (3) breach of implied contract related to the Golf Club's access to the storm water pond; (4) breach of implied easement related to the Golf Club's access to the storm water pond; and (5) Dornoch Estates' claim for abuse of process.

{¶29} The trial court ruled on the remaining claims via judgment entry filed March 5, 2019. The trial court first found the Golf Club established Dornoch Estates breached the contract when it did not allow the Golf Club to access the storm water pond. It awarded the Golf Club $54,627.75 in damages. Because the Golf Club requested the same relief in its claims for breach of implied contract and breach of implied easement, the trial court found those claims moot. The trial court next found that the Golf Club was not entitled to declaratory judgment that would alter the terms of the Agreement and Easement. In its arguments, the Golf Club asserted that a minimum of 76 acres of land was needed to fulfill the purpose of the easement, supported by scientific evidence presented at trial. Dornoch Estates alternatively relied on the unambiguous terms of the Agreement and Easement, arguing the easement applied to the entire golf course property. The trial court agreed the evidence presented showed that the treated wastewater could be safely discharged onto a land area less than 144 acres. The trial court found it was bound by the unambiguous terms of the Agreement and Easement, which stated that the easement applied to the entire 18-hole golf course. Finally, the trial court found the evidence did not support Dornoch Estates' claim for abuse of process.

## Appeal

{¶30} The Golf Club filed a notice of appeal on April 4, 2019.

{¶31} On April 16, 2019, Dornoch Estates filed a motion for leave to file a delayed appeal and notice of cross appeal. The Golf Club responded to the motion and Dornoch Estates replied. We denied the motion for leave to file a delayed appeal on May 6, 2019.

{¶32} On May 17, 2019, Dornoch Estates filed a motion to deem its cross appeal timely filed. On May 21, 2019, Dornoch Estates filed a motion for extension of time to file

its brief on cross appeal. The Golf Club responded to both motions in opposition. On May 29, 2019, we granted Dornoch Estates an extension to file their brief on cross appeal on or before June 17, 2019. Dornoch Estates filed its brief on cross appeal on June 17, 2019.

{¶33} On June 27, 2019, however, we issued a nunc pro tunc judgment entry removing the words "cross appeal" from our judgment entry granting Dornoch Estates' extension to file its brief. We issued a second judgment entry denying Dornoch Estates' motion to deem the cross appeal timely filed. The Golf Club thereafter filed a motion to strike the June 17, 2019 brief. On July 15, 2019, we granted the Golf Club's motion to strike the June 17, 2019 cross appeal brief. Dornoch Estates filed an appeal with the Ohio Supreme Court of our July 15, 2019 judgment entry. The Ohio Supreme Court declined to accept jurisdiction. On November 6, 2019, we denied a pending motion for reconsideration of our June 27, 2019 judgment entry.

{¶34} Accordingly, the only appeal before this Court is the appeal filed by the Golf Club.

### ASSIGNMENT OF ERROR

{¶35} The Golf Club raises one Assignment of Error:

{¶36} "THE TRIAL COURT ERRED WHEN IT FAILED TO PROVIDE DECLARTORY RELIEF. JUDGMENT ENTRY ANNOUNCING THE VERDICT FOLLOWING THE JANUARY 2019 TRIAL AT 5-11 (MAR. 5, 2019) ("ORDER"); THIRD AMENDED COMPLAINT WITH REQUEST FOR PERMANENT INJUNCTIVE RELIEF AT ¶ 67-80."

**ANALYSIS**

{¶37} The Golf Club argues the trial court erred when it found in favor of Dornoch Estates on its request for declaratory judgment concerning the Golf Club's use of the golf course property and the interpretation of the Agreement and Easement. We disagree.

**Standard of Review**

{¶38} We review a trial court's determination of matters of law in a declaratory judgment action under a de novo standard of review. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13. Ohio appellate courts have held that when the trial court uses extrinsic evidence to determine the dimensions or scope of an easement, an issue of fact is presented. *Cliffs and Creeks, LLC. v. Swallie*, 2018-Ohio-5410, 128 N.E.3d 825, ¶ 12 (7th Dist.). The trial court as the trier of fact, however, has the advantage of observing the witnesses at trial and assessing their credibility. As to our consideration of the trial court's findings of fact, we defer to the trial court. *Brown v. Brown*, 2017-Ohio-8938, 102 N.E.3d 72, ¶ 20 (3rd Dist.). A reviewing court will not disturb the trial court's decision if it is supported by competent, credible evidence. *Cliffs and Creeks,* 2018-Ohio-5410, ¶ 12 citing *Bayes v. Toledo Edison Co.*, 6th Dist. Nos. L–03–1177, L–03–1194, 2004-Ohio-5752, 2004 WL 2426234, ¶ 69; *Gans v. Andrulis*, 11th Dist. No. 99-P-0118, 2001 WL 530490, *4-5 (May 18, 2001); *Munchmeyer v. Burfield*, 4th Dist. No. 95CA7, 1996 WL 142579, *3 (Mar. 26, 1996); *Murray v. Lyon*, 95 Ohio App.3d 215, 219, 642 N.E.2d 41 (9th Dist.1994). *See also Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir.2008).

**Express Easement**

{¶39} An easement has been defined as an interest in the land of another created by prescription or express or implied grant, which entitles the owner of the easement to a limited use of the land in which the interest exists. *Myers v. McCoy*, 5th Dist. Delaware No. 2004CAE07059, 2005-Ohio-2171, 2005 WL 1038871, ¶ 16 citing *Alban v. R.K. Company*, 15 Ohio St.2d 229, 198, 239 N.E.2d 22 (1968). The owner of the easement is referred to as the dominant estate (Dornoch Estates) and the land in which the interest exists is called the servient estate (Golf Club). *Id*. When an easement is granted by an express grant, the extent and limitations upon the dominate estate's use of the land depends upon the language of the granting instrument. *Id*. The easement at issue here is an express easement as stated in the Agreement and Easement.

{¶40} The grant of an easement includes the grant of all things necessary for the dominant estate to use and enjoy the easement. *Myers v. McCoy*, 5th Dist. Delaware No. 2004CAE07059, 2005-Ohio-2171, 2005 WL 1038871, ¶ 17 citing *Day, Williams & Company v. RR. Company*, 41 Ohio St.3d 392 (1884). Thus, in determining the nature and extent of an easement, the court must construe the easement in a manner permitting the dominant estate to carry out its purpose. *Alban, supra*.

{¶41} When interpreting the terms of a written easement, the court must follow the ordinary rules of contract construction so as to carry out the intent of the parties as demonstrated by the language in the contract. *Hemmelgarn v. Huelskamp & Sons, Inc.*, 3rd Dist. Shelby No. 17-19-07, 2019-Ohio-5298, 2019 WL 7049679, ¶¶ 12-13 citing *Lakewood Homes v. BP Oil, Inc.*, 3rd Dist. No. Hancock 5-98-29, 1999 WL 693152 (Aug. 26, 1999), citing *Skivolocki v. East Ohio Gas Company*, 38 Ohio St.2d 244, 313, 313

N.E.2d 374 (1974), syllabus, paragraph one. If the question is the scope of an easement, the court must look to the language of the easement to determine the extent.

{¶42} When the terms of an easement are clear and unambiguous, a court cannot create new terms by finding an intent not expressed in the language used. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). A court abuses its discretion if it alters an established easement or requires a party to accept an altered easement in substitution of the original. *Myers*, 2005-Ohio-2171, ¶18 citing *Munchmeyer v. Burfield*, 4th Dist. Washington No. 95–CA–7, 1996 WL 142579 (Mar. 26, 1996), citations deleted.

{¶43} If there is no specific delineation of the easement, or if the document is ambiguous, the court must then look to the circumstances surrounding the transaction in order to determine the intent of the parties. *Hemmelgarn*, 2019-Ohio-5298, ¶ 13 citing *Murray v. Lyon*, 95 Ohio App.3d 215, 219, 642 N.E.2d 41 (9th Dist. 1994). The language of the easement, coupled with the surrounding circumstances, is the best indication of the extent and limitations of the easement. *Apel v. Katz*, 83 Ohio St.3d 11, 17, 697 N.E.2d 600 (1998).

### Interpretation of the Terms of the Agreement and Easement

{¶44} The trial court succinctly summarized the parties' arguments in its March 5, 2019 judgment entry:

Their disagreement about [the Agreement and Easement] is the crux of this case. * * * [T]he golf club has asked that I at least flesh out the parties' agreement-related rights and obligations in light of the evidence presented at trial. In the golf club's view, just 76 acres of land is needed to fulfill the

purpose of the easement, and the golf club has presented some evidence supporting that view. Dornoch in turn contends that the 2007 agreement – and in particular, the easement granted to Dornoch in the first paragraph of that agreement – applies to the entire golf course operated by the plaintiff golf club. (The golf course is variously described in documents presented at trial as 126 acres or 144 acres in size.) Dornoch opposes any lessening of the acreage to which its easement applies.

(Mar. 5, 2019 Judgment Entry).

{¶45} At trial, Michael Sapp of the OEPA testified on behalf of the Golf Club. Sapp had been involved in the development of the wastewater treatment plant since 1997. He testified to the Permit to Install issued in 1997 and the appended engineering report. According to Sapp, the engineering report was a summary document the engineer reviewing the Permit to Install gave to the supervisor for background and basic design for the system. He stated that in the appended report, the engineer calculated pursuant to Bulletin 860 that 76 acres of land were required to apply the treated wastewater based on the design flow of the wastewater treatment plant. Bulletin 860 was a publication developed by the Ohio State University Agriculture Extension Office that contained the design standards the OEPA uses to review permits to install application for land application systems. Based on the design flow of the wastewater treatment plant, 76 acres were required to apply treated wastewater and 144 acres were provided. The intervening LAMP did not change the minimum requirements as calculated by Bulletin 860.

{¶46} Dornoch alternatively relied upon the language of the Agreement and Easement that described the easement as applying to "the entire eighteen (18) golf course" and referred to the Permit to Install and appended report which described the golf course property as 144 and/or 126 acres. Sapp testified that the Permit to Install did not refer to 76 acres or require 76 acres; the only reference to 76 acres was in the attached engineering report. He also stated there were advantages to having more acres than the minimum available because it better protected surface and ground water. Additional acreage also provided operational flexibility.

{¶47} The trial court ultimately found the terms of the Agreement and Easement were clear and unambiguous as to the dimensions and nature of the easement. It found that while the scientific evidence presented by the Golf Club supported its argument that only 76 acres were necessary to safely discharge the treated wastewater, the terms of the Agreement and Easement obligated the Golf Club to make the entire golf course available to Dornoch for the purpose of the easement, to safely discharge the treated wastewater. If it found that 76 acres were permissible under the Agreement and Easement, the trial court stated it would be impermissibly modifying the clear language of the easement. The trial court therefore found in favor of Dornoch Estates on the Golf Club's request for declaratory judgment.

{¶48} In its appeal, the Golf Club maintains the trial court erroneously failed to consider its request for declaratory judgment. Upon our review of the trial court's March 5, 2019 judgment, we find the trial court considered the Golf Club's request for declaratory judgment and found in favor of Dornoch Estates as a matter of law. The trial court found the Golf Club was not entitled to declaratory judgment that 76 acres for discharge of the

treated wastewater was permissible because the terms of the Agreement and Easement required the use of the entire golf course property.

{¶49} The Golf Club cites the following statement of law in support of its argument that its planned development does not unreasonably interfere with the easement and the easement does not expressly limit the Club's right to develop the golf course property: "Because all residual rights remain in the possessory or servient estate, the servient landowner may make any use of his property that does not 'unreasonably interfere' with easement holder's use of the easement, unless the easement agreement provides otherwise. *Watson v. Caldwell Hotel, LLC*, 2017-Ohio-4007, 91 N.E.3d 179, ¶ 24 (7th Dist.) citing *Hunker v. Whitacre–Greer Fireproofing Co.*, 155 Ohio App.3d 325, 2003-Ohio-6281, 801 N.E.2d 469, ¶ 30 (7th Dist.) citing 1 Restatement of the Law 3d, Property, Section 4.9, at 581–582 (2000). The issue in this case is whether the "easement agreement provides otherwise."

{¶50} The Agreement and Easement is an express easement and we use the ordinary rules of contract construction so as to carry out the intent of the parties as demonstrated by the language in the contract. The Agreement and Easement states the purpose of the easement:

A. [Golf Club] (Grantor) is the owner of real estate located at 3329 Columbus Pike, Delaware, Ohio, situated on the acreage described in "Exhibit A", attached hereto "the Real Estate", which property currently consists of the entire eighteen (18) hole golf course and real property and components related to its use as a golf course, and which property surrounds the sewage treatment plant owned and operated by the

Association (Grantee) on the 1.016 acre tract described in "Exhibit B" attached;

B. The clean, treated wastewater from the Association's (Grantee's) facility is a partial resource for irrigation of the Real Estate; and

C. The Real Estate is an essential resource to the Association's (Grantee's) facility, providing a safe and sanitary means for disposal of the clean water outflow from the Association's (Grantee's) facility; and

D. The Association's (Grantee's) facility is designed to prevent intrusion of the facility's outflow into the nearby Olentangy River, and its design and operations have been approved by the Ohio Environmental Protection Agency; and

{¶51} In order to effectuate the purpose of the easement, the parties agreed to the following:

1. Development (Grantor) hereby grants to Association (Grantee) an easement upon the Real Estate described in Exhibit "A" for the purpose of disposing clean, treated, outflow from Association's (Grantee's) treatment facility * * * which clean water shall be piped into the Real Estate lake, and, when needed, to the adjacent retention basin, * * *, to be distributed through the Real Estate irrigation system.

* * *

3. This easement includes and Development (Grantor) agrees to accept the Association's (Grantee's) entire outflow of clean, treated water * * * as

permitted by the Permit to Install No. 01-7240 originally issued effective September 29, 1997. * * *

* * *

8. Development (Grantor) covenants that it will detain, distribute, and apply the Association's (Grantee's) entire outflow upon the Real Estate as presently configured in compliance with the requirements of the Ohio Environmental Protection Agency and the Permit to Install associated with the facilities accommodated hereby.

{¶52} The Permit to Install referred to in the Agreement and Easement was issued by the OEPA to Dornoch Estates on September 29, 1997, for the installation and operation of a wastewater treatment plant to serve the subdivision and the golf course. The permit applied to a wastewater disposal system designed to serve an average daily hydraulic flow of no more than 120,000 gallons. The engineering report, appended to the Permit to Install, stated in pertinent part:

*Irrigation*: The average estimated irrigation season is 245 days. The irrigation pumping station will be designed with a capacity of 1240 gpm. The reclaimed water will be used to irrigate turf grasses on the golf course. 144 total acres are available for irrigation with an average weekly irrigation rate of 0.32 inches per week. * * * The irrigation area required as calculated using Bulletin 860 is 76 acres. * * *

*Summary of WWRU System*: The design of the WWRU system for the Tartan Fields Golf Community adheres to the minimum requirements set forth in Bulletin 860, Reuse of Reclaimed Wastewater Through Irrigation for

Ohio Communities. The overall design has been generally conservative with regards to storage time (139 days rather than 120 days) and the amount of acreage available for WWRU application (76 acres required and 144 acres provided). This conservative approach should allow for good flexibility in the overall operation of the WWRU system.

{¶53} The language of the Agreement and Easement describes the dimensions of the easement necessary to effectuate the purpose of the easement to distribute the treated wastewater and protect ground and surface water. First, the Agreement and Easement describes the Golf Club property in Paragraph A as "situated on the acreage described in "Exhibit A", attached hereto 'the Real Estate', which property currently consists of the entire eighteen (18) hole golf course and real property and components related to its use as a golf course." The Agreement and Easement describes the "Real Estate" as an entire 18-hole golf course; it does not state the property in question is 76, 126, or 144 acres. Second, the "Real Estate", the 18-hole golf course, was stated to be necessary for the purpose of the easement to provide irrigation for the "Real Estate" and a safe and sanitary means for disposal of the treated wastewater. Third, the Agreement and Easement effectuates the purpose of the easement by granting Dornoch Estates an easement upon the "Real Estate" described in Paragraph A, which stated the "Real Estate" was an "entire eighteen (18) hole golf course." Again, there is no reference in the description of the easement as to the acreage, either 76 or 144 acres. Fourth, the Permit to Install, noted in the Agreement and Easement, does not make any reference to acreage necessary for land application of the treated wastewater. The appended engineering report states that 76 acres is the calculated acreage required for land application of the

treated wastewater, but it also states that 144 acres is provided, allowing for operational flexibility. The 144 acres is the entire golf course property. The description of the property, purpose of the easement, description of the easement, and the language of the permit to install clearly set the dimensions of the easement as the "entire eighteen (18) hole golf course."

{¶54} The Golf Club argued before the trial court and on appeal that making 76 acres available to Dornoch Estates for the land application of its treated wastewater would not unreasonably interfere with Dornoch's use of the easement. The trial court, however, found the Agreement and Easement unambiguously provided otherwise, requiring it to deny the Golf Club's request for declaratory judgment. Upon our de novo review of the request for declaratory judgment based on the language of the Agreement and Easement, we agree with the trial court that its unambiguous terms require the entire golf course property as described by the Agreement and Easement be available to effectuate the purpose of the Agreement and Easement. Any modification by the trial court of the delineation of the easement as specified in the Agreement and Easement would be an impermissible alteration of the terms by the trial court.

{¶55} The Golf Club's sole Assignment of Error is overruled.

**CONCLUSION**

{¶56} The judgment of the Delaware County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.